# EXHIBIT A

# Complaint

# EXHIBIT A

Electronically Filed
9/26/2019 9:58 AM
Steven D. Grierson
CLERK OF THE COURT

1
COMP
RICHARD HARRIS, ESQ.
2
Nevada Bar No. 505
BENJAMIN CLOWARD, ESQ.
3
Nevada Bar No. 11087
5
BURKE HUBER, ESQ.
Nevada Bar No. 10902
6
RICHARD HARRIS LAW FIRM
7
801 South Fourth St.
Las Vegas, NV 89101
8
Tel.    (702) 444-4444
Fax     (702) 444-4455
9
Email:burke@richardharrislaw.com
10
*Attorneys for Plaintiffs*

CASE NO: A-19-802598-C
Department 20

11
**DISTRICT COURT**

12
**CLARK COUNTY, NEVADA**

13

14
BRENNA SCHRADER, an individual, on behalf
of herself and all others similarly situated,
15
                Plaintiff,
16
vs.
17
STEPHEN   ALAN   WYNN;   an   individual;
18
MAURICE   WOODEN,   an   individual,   WYNN
LAS VEGAS, LLC dba WYNN LAS VEGAS a
19
Nevada Limited Liability; WYNN RESORTS,
LTD, a Nevada Limited Liability Company; and
20
DOES 1-20, inclusive; ROE CORPORATIONS 1-
20, inclusive,
21

22
                Defendants.

23

24

25

26

27

28

| | |
|---|---|
| CASE NO.: | |
| DEPT. NO.: | |

**CLASS ACTION COMPLAINT FOR DAMAGES FOR**

1. **VIOLATION OF TITLE VII (42 U.S.C. §§ 2000 et. seq.)**
2. **VIOLATION OF 18 U.S.C. § 1589**
3. **VIOLATION OF 18 U.S.C §§ 1962(b),(c) and (d) (Federal RICO)**
4. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
5. **CIVIL CONSPIRACY**
6. **VIOLATION OF 29 U.S.C. § 206**

**DEMAND FOR JURY TRIAL**

1

COMES NOW Plaintiff, BRENNA SCHRADER, by and through their attorney, BURKE HUBER, ESQ. of RICHARD HARRIS LAW FIRM and for the causes of action against Defendants alleges as follows:

**PARTIES AND JURISDICTION**

1.      At all times relevant, Brenna Schrader ("Ms. Schrader" or "Plaintiff"), was a resident of Clark County, Nevada and an employee of Wynn Resorts, LTD.

2.      At all times relevant, Defendant, STEPHEN ALAN WYNN ("Defendant Wynn"), is a resident of Clark County, Nevada and an executive of Wynn Resorts, LTD and Wynn Las Vegas, LLC.

3.      At all times relevant, Defendant, MAURICE WOODEN ("Defendant Wooden"), is a resident of Clark County, Nevada an executive of Wynn Resorts, LTD and Wynn Las Vegas, LLC.

4.      At all times relevant, Defendant, WYNN RESORTS, LLC ("Defendant Resorts") is a Nevada limited liability company subject to the jurisdiction of Clark County, Nevada.

5.      At all times relevant, Defendant WYNN LAS VEGAS, LLC dba WYNN LAS VEGAS ("Defendant Wynn Las Vegas") (collectively Defendants).

6.      At all times relevant, the true names and capacities whether individual, corporate, associate, partnership or otherwise of the Defendant herein designated as DOES 1-10, inclusive, are unknown to the Plaintiff who therefore sues said Defendants by such fictitious names.  The identities of Defendants DOES 11-20, and ROE CORPORATIONS 1-20, are unknown at this time and may be individuals, corporations, associations, partnerships, subsidiaries, holding companies, owners, predecessor or successor entities, joint venturers, parent corporations or related business entities of Defendants, inclusive, who were acting on behalf of or in concert with, or at the direction of Defendants and may be responsible for the injurious activities of the other Defendants.  Plaintiff requests leave of the Court to amend this Complaint to specify the Doe Defendants when their identities become known.  Plaintiff will

1  ask leave of this court to insert the true names and capacities of such Defendants when the
2  same have been ascertained and will further ask leave to join said Defendants in these
3  proceedings.

5      7.    All the facts and circumstances that give rise to the subject lawsuit occurred in
6  Clark County, Nevada.

7  **CLASS ACTION ALLEGATIONS**

8      8.    The class that Plaintiff represents is defined in subclasses as follows:

9         a) All current and former female employees of Defendants
10          in the State of Nevada, who were and are subjected
11          severe and pervasive sexual discrimination as a result
         of Defendants' failure to investigate and their active
         coverup of allegations of sexual misconduct;
12        b) All current and former female employees of Defendants
13          in the State of Nevada, who were and are subjected to a
14          sexually hostile work environment as a result of
         Defendants' failure to prevent discrimination based
         upon sex (female);
15        c) All current and former female employees employed by
16          Defendants in the State of Nevada who were harmed or
17          forced into servitude by Defendants' failures to
         investigate and enforce policies of discrimination.
18        d) All current and former female employees employed by
19          Defendants in the State of Nevada who were harmed in
         their business and property as a result of Defendants'
         racketeering activity.
20        e) All current and former spa masseuses are forced to
         work off-the-clock in violation of minimum wage laws.
21

22     9.    This action has been brought and may properly be maintained as a class action
23 pursuant to the provisions of Nevada Rules of Civil Procedure 23, because there is a well-
24 defined community of interest in the litigation and the proposed class is ascertainable:

25     A.    NUMEROSITY:  The plaintiff class is so numerous that the individual
26         joinder of all members is impractical under the circumstances of this case.
27         While the exact number of class members is unknown to plaintiffs at this
28         time, plaintiffs are informed and believe that many current and former

3

1       employees of defendant have been denied payment of overtime

2       compensation for their work during the period covered by this action;

3   B.      COMMON QUESTIONS PREDOMINATE:  Common questions of law

5       and fact exist as to all members of the plaintiff class and predominate over

6       any questions that affect only individual members of the class.  The

7       common questions of law and fact include, but are not limited to:

8       i.      Whether Defendants created a sexually hostile work environment

9       entitling plaintiff class to damages;

10      ii.     Whether Defendants created forced sexual servitude upon class

11      members in violation of 18 U.S.C. §1589 entitling plaintiff class to

12      damages;

13      iii.    Whether Defendants harmed class members' business and property

14      in violation of 18 U.S.C. § 1962(c); 1962 (b); 1962(d) entitling plaintiff

15      class to damages;

16      iv.    Whether Defendants intentionally inflicted emotional distress on

17      class members entitling plaintiff class to damages;

18      v.     Whether Defendant Wynn engaged in a patter and practice of

19      sexual harassment, assault and battery entitling plaintiff class to damages;

20      vi.    Whether Defendant Wynn's pattern and practice of sexual

21      harassment, assault and battery was committed within the scope of his

22      employment;

23      vii.   Whether Defendant Resorts and Defendant Wynn Las Vegas had

24      knowledge of the sexually hostile environment and actively covered it up

25      entitling plaintiff class to damages;

26      viii.   Whether Defendants negligently retained and/or supervised

27      Defendant Wynn;

28   . . .

RICHARD HARRIS
LAW FIRM

ix.     Whether Defendants Resorts and Wynn Las Vegas are responsible for Defendant Wynn's conduct under the doctrine of respondeat superior;

x.      Whether Defendants failed to pay overtime to class members entitling plaintiff class to damages;

C.      TYPICALITY:  Plaintiff's claims are typical of the claims of the class members.  Plaintiffs and the members of the class sustained damages arising out of defendants' common practice of failing to pay overtime compensation to employees.  Plaintiff, like the other Class members, were required to work over 8 hours per day, and over 40 hours per week during the period covered by this action;

D.      ADEQUACY:  Plaintiff will fairly and adequately protect the interests of the members of the class.  Plaintiff has no interest that is adverse to the interests of the other class members;

E.      SUPERIORITY:  A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impractical; class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  The cost to the court system of adjudication of such individualized litigation would also present the potential for inconsistent or contradictory judgments;



RICHARD HARRIS
LAW FIRM

5

1   F.   PUBLIC POLICY CONSIDERATION:  Employers throughout the state
2        violate do not enforce sexual harassment policies or investigate high level
3        executives within their corporate structure.  Current employees are often
5        afraid to assert their rights out of fear of direct, or indirect retaliation.
6        Former employees are fearful of bringing actions because they perceive
7        their former employers can blacklist them in their future endeavors
8        through negative references.  Class actions provide the class members who
9        are not named on the Complaint with a type of anonymity that allows for
10       vindication of their rights

## FACTS

10.   Defendant Wynn engaged in over a decade of sexual abuse, harassment and misconduct while serving as Chief Executive Officer of Defendant Resorts and Defendant Wynn Las Vegas.

11.   Defendants collectively engaged in over a decade of coverup to prevent the discovery and remedy Defendant Wynn's sexual abuse, harassment and misconduct.

12.   Defendants' decades-long coverup of sexual abuse allegations created a culture where employees were afraid to pursue complaints, believed that speaking up would be pointless and result in their inability to work anywhere in Nevada again.

13.   These efforts at secrecy made it exceedingly difficult, if not impossible, for gaming regulators, government officials, Defendants supervisors, managers and human resources personnel to detect sexual misconduct and to prevent said misconduct.

14.   These efforts at secrecy also created an environment sexually hostile to females that made them feel powerless, without a voice, and incapable of complaining to management, administrative bodies or seeking employment elsewhere in Nevada.

15.   Defendants' coverup actions instilled an environment of fear and intimidation that prevented Plaintiff and others similarly situated from filing formal complaints.

. . .

6

16.     In or around April of 2019, Defendant Resorts' chief executive, Matthew Maddox, admitted in a public disclosure that he felt "***deeply remorseful. [Defendants' female employees] felt that they didn't have a voice. That if [Defendants' female employees] were to speak up they could be retaliated against. Or if they did, it would not be investigated.***"

17.     Defendant Resorts' chief executive, Matthew Maddox, further stated, "***I am sorry that our company did not live up to its values.***"

## NEVADA GAMING CONTROL BOARD DETAILED LEGAL ABUSES

The Nevada Gaming Board alleged the following:

18.     In 2005, a female employee ("Employee 1") complained that Defendant Wynn had sexually assaulted her; however, Michael Schorr ("Schorr"), Doreen Whennen ("Whennen"), and Arte Nathan ("Nathan") failed to initiate an investigation into the allegation and later settled it confidentiality for $7.5 million through a separate legal entity funded personally by Defendant Wynn.

19.     In January 2012, at the latest, Kimmarie Sinatra ("Sinatra"), Senior Vice Present for Defendant Resorts, learned of the 2005 settlement. By July 2017, at the latest, Sinatra learned that Employee 1 had alleged that Defendant Wynn had raped her.

20.     Defendants did not conduct a timely investigation into Employee 1's rape allegations.

21.     At least four (4) former executives of Defendant Resorts and Defendant Wynn, failed to initiate and/or conduct an investigation after obtaining knowledge of allegations of sexual misconduct against Defendant Wynn as required by Defendants' policies and procedures.

22.     Defendants' failures to initiate and/or conduct an investigation as described herein, in whole or in part, constitute violations of NRS § 463.170(8) and/or Nevada Gaming Commission Regulations 5.010, 5011(1) and/or 5.011(10).

23.     Each separate occasion when Defendants failed to initiate and/or conduct an investigation as described herein constituted a separate violation of the Gaming Control Act

7

1     and Regulations of the Commission, as herein specified, for the purposes of NRS §

2     463.310(4)(d)(2).

3          24.     Another female employee ("Employee 2") alleged that Defendant Wynn

5     pressured her into a nonconsensual sexual relationship that lasted from 2005 through her

6     departure from Defendant Resorts in 2006.

7          25.     Defendant Wynn entered into a private settlement with Employee 2's

8     allegations of sexual misconduct against Defendant Wynn in 2006.

9          26.     Schorr, Nathan and Kevin Tourek ("Tourek") all failed to initiate an

10    investigation into Employee 2's allegations of sexual misconduct in violation of Defendants'

11    policies and procedures.

12         27.     At least three (3) former executives of Defendant Resorts failed to initiate or

13    conduct an investigation after obtaining knowledge of allegations of sexual misconduct against

14    Defendant Wynn as required by Defendants' policies and procedures.

15         28.     Each separate occasion when Defendants failed to initiate and/or conduct an

16    investigation as described herein constitutes a separate violation of the Gaming Control Act

17    and Regulations of the Commission, as herein specified, for the purposes of NRS §

18    463.310(4)(d)(2).

19         29.     In 2014, Employee 3, a former Defendant Resorts employee (Employee 3)

20    alleged that Defendant Wynn engaged in sexual misconduct against her in 2005.

21         30.     Tourek and Defendant Wooden both failed to initiate an investigation into

22    Employee 3's allegations of sexual misconduct in violation of Defendant Resorts' policies and

23    procedures.

24         31.     At least two (2) former executives of Defendant Resorts, failed to initiate and/or

25    conduct an investigation after obtaining knowledge of allegations of sexual misconduct against

26    Defendant Wynn as required by Defendants' policies and procedures.

27    . . .

28    . . .

Case 2:19-cv-02159-JCM-BNW Document 1-1 Filed 12/16/19 Page 10 of 26

32. Defendants' failures to initiate and/or conduct an investigation as described herein, in whole or in part, constitute violations of NRS § 463.170(8) and/or Nevada Gaming Commission Regulations 5.010, 5011(1) and/or 5.011(10).

33. Each separate occasion when Defendants failed to initiate and/or conduct an investigation as described herein constitutes a separate violation of the Gaming Control Act and Regulations of the Commission, as herein specified, for the purposes of NRS § 463.310(4)(d)(2).

34. Three other employees, Employee 4, Employee 5 and Employee 6, whom worked at Defendant Resorts' spa made allegations that Defendant Wynn had engaged in sexual harassment during massages that were performed on him in 2014.

35. Employee 4, Employee 5, and Employee 6, reported some or all of the alleged sexual harassment by Defendant Wynn to management, but no one in Defendants' management reported the allegations or otherwise ensured that the allegations had been reported thereto, as would have been required by Defendants' policies and procedures in effect at the time, so an investigation could be conducted.

36. Several individuals, including managers and executives of Defendants, became aware of some or all of the allegations of sexual harassment by Defendant Wynn made by Employee 4, Employee 5 and Employee 6 but did not report the allegations or otherwise ensure that the allegations had been reported thereto, as would have been required by Defendants' polices and procedures.

37. Defendants' failures to initiate and/or conduct an investigation as described herein, in whole or in part, constitute violations of NRS § 463.170(8) and/or Nevada Gaming Commission Regulations 5.010, 5011(1) and/or 5.011(10).

38. Each separate occasion when Defendants failed to initiate and/or conduct an investigation as described herein constitutes a separate violation of the Gaming Control Act and Regulations of the Commission, as herein specified, for the purposes of NRS § 463.310(4)(d)(2).

9

39.     Another one of Defendants' employee, Employee 7, submitted written correspondence to Defendant Wynn dated October 27, 2016, in which she made allegations that Defendant Wynn engaged in sexual harassment with multiple flight attendants, which was forwarded to Sinatra.

40.     Sinatra, however, did not report the allegations, or otherwise ensure that the allegations had been reported thereto, as would have been required by Defendants' policies and procedures.

41.     Defendants' failures to initiate and/or conduct an investigation as described herein, in whole or in part, constitute violations of NRS § 463.170(8) and/or Nevada Gaming Commission Regulations 5.010, 5011(1) and/or 5.011(10).

42.     Each separate occasion when Defendants failed to initiate and/or conduct an investigation as described herein constitutes a separate violation of the Gaming Control Act and Regulations of the Commission, as herein specified, for the purposes of NRS § 463.310(4)(d)(2).

43.     Multiple allegations were made that Defendants' employee, Employee 8, had facilitated sexual relationships between cocktail servers at Defendant Resorts and Defendant Wynn and/or guests of Defendant Resorts.

44.     Defendant Nathan, during his tenure at Defendant Resorts as Senior Vice President and Chief Human Resource Officer, was aware of rumors that Employee 8 was facilitating the sexual relationships referred to above.

45.     Nathan, however, did not investigate the rumors, or otherwise ensure that the rumors had been reported thereto, as would have been required by Defendants' policies and procedures.

46.     Defendants' failures to initiate and/or conduct an investigation as described herein, in whole or in part, constitute violations of NRS § 463.170(8) and/or Nevada Gaming Commission Regulations 5.010, 5011(1) and/or 5.011(10).

. . .

10

47.     Each separate occasion when Defendants failed to initiate and/or conduct an investigation as described herein constitutes a separate violation of the Gaming Control Act and Regulations of the Commission, as herein specified, for the purposes of NRS § 463.310(4)(d)(2).

48.     In 2007, Tourek, received an email alleging a former executive "loves sleeping with cocktail servers."

49.     Tourek did not report this allegation or initiate and/or conduct an investigation after receiving the email.

50.     Defendants' failures to initiate and/or conduct an investigation as described herein, in whole or in part, constitute violations of NRS § 463.170(8) and/or Nevada Gaming Commission Regulations 5.010, 5011(1) and/or 5.011(10).

51.     Each separate occasion when Defendants failed to initiate and/or conduct an investigation as described herein constitutes a separate violation of the Gaming Control Act and Regulations of the Commission, as herein specified, for the purposes of NRS § 463.310(4)(d)(2).

52.     Defendants' policies and procedures requiring employee attendance at annual compliance training were not applied to Defendant Wynn.

53.     Defendants' policies and procedures pertaining to Defendant Wynn spas were not applied to Mr. Wynn.

54.     Defendants' policies and procedures pertaining to conflicts of interest were not followed for several settlements, including, but not limited to, the 2005 Settlement, and the 2006 settlement.

55.     The ability of Defendants' executives to operate outside of Company policies and procedures contributed to the internal control breakdowns that occurred in relation to allegations of misconduct as described in this complaint.

. . .

. . .

11

56.     Defendants' failures to initiate and/or conduct an investigation as described herein, in whole or in part, constitute violations of NRS § 463.170(8) and/or Nevada Gaming Commission Regulations 5.010, 5011(1) and/or 5.011(10).

57.     Each separate occasion when Defendants failed to initiate and/or conduct an investigation as described herein constitutes a separate violation of the Gaming Control Act and Regulations of the Commission, as herein specified, for the purposes of NRS § 463.310(4)(d)(2).

58.     Defendants maintained a policy of personal relationships between employees that "discouraged romantic or intimate relationships involving direct or indirect supervisory relationship between employees regardless of whether the relationship is voluntary and/or welcomed by both parties."

59.     Defendants maintained a policy for harassment and discrimination that stated that "all employees are responsible for maintaining a professional work environment by treating everyone with respect and by being aware of their own behavior toward others in the workplace."

60.     Defendant Wynn, while Chairman of the Board of Directors and Chief Executive of Defendant Resorts, engaged in intimate and sexual conduct with Defendants' employees.

61.     Defendant Wynn failed to comply with Defendants' policies that he maintained professional work environment and/or failed to comply with the spirit of Defendants' polices that discouraged intimate relationships between himself and employees.

62.     Defendants' failures described herein, in whole or in part, constitute violations of NRS § 463.170(8) and/or Nevada Gaming Commission Regulations 5.010, 5011(1) and/or 5.011(10).

. . .

. . .

. . .

12

63.     Each separate occasion when Defendants failed to initiate and/or conduct an investigation as described herein constitutes a separate violation of the Gaming Control Act and Regulations of the Commission, as herein specified, for the purposes of NRS § 463.310(4)(d)(2).

64.     Defendants did not enforce their policies and procedures with regard to their executives and other high-level employees following the reporting procedures for sexual harassment and related matters.

65.     Defendants' failures to enforce policies and procedures have led to multiple instances, a number of which are set out in this Complaint, where sexual harassment allegations concerning Defendants executives were not investigated.

66.     Defendants' failures to enforce its policies and procedures have led to multiple instances where allegations of sexual harassment by executives of Defendants were not appropriately addressed by Defendants.

67.     Angela Saxton, a former spa attendant, said that an executive warned her against complaining about an alleged sexual assault by Defendant Wynn.

### PLAINTIFF SCHRADER

68.     Plaintiff did exhaust her administrative remedies and obtain a right to sue letter.

69.     In or around December of 2012, Plaintiff was tasked to perform a massage on Defendant Wynn.

70.     When Plaintiff walked into the massage room, Defendant Wynn laid atop of the massage table completely exposed.

71.     After massaging Defendant Wynn for a few minutes, Defendant Wynn ordered Plaintiff to perform oral sex on him.

72.     Fearing for her safety and her financial future, Plaintiff complied; afterwards, she felt violated, broken and humiliated.

73.     Plaintiff wanted to complain but was terrified of Defendant Wynn's power and status in Las Vegas.

74.     Plaintiff had been told to never say "no" to or speak negatively about Defendant Wynn.

75.     Plaintiff tried to complain to a manager that Defendant Wynn had done horrible things to her; however, the manager told her sternly: "*We don't say anything negative about Steve Wynn.*"

76.     On or around June 23, 2015, while out celebrating her friend's birthday, Defendant Wynn had his assistant, Laurie, call Plaintiff to go to Defendant Wynn's office.

77.     Plaintiff immediately left her friend's birthday celebration and went to Mr. Wynn's office.

78.     Defendant Wynn then ordered Plaintiff to perform a sexual act on him.

79.     After complying with Defendant Wynn's orders, he told Plaintiff to leave.

80.     Plaintiff returned to her friend's birthday celebration emotionally destroyed.

81.     From 2012 until 2016, Defendant Wynn forced Ms. Schrader to perform oral sex on many occasions.

82.     From 2012 until 2019, Plaintiff attempted to report or complain about the sexual hostile environment and the sexual prisonlike atmosphere that existed and permeated her employment.

83.     Through a decade-long campaign of exacting silence, Defendants conditioned employees that saying "no" or challenging Defendant Wynn was not an option and sexual servitude was their only choice.

84.     Defendants also told female employees that they were not allowed to say "no" to VIP clients under any circumstances.

85.     Due to Defendants' well-established power throughout Nevada, Plaintiff felt vulnerable and without viable options to ever leave her employ.

86.     Defendant Resorts' managers always told Plaintiff to be available for Defendant Wynn and VIP clients upon a moment's notice.

. . .

14

87.     In addition, memorandums are often posted in support of Defendant Wynn and asserting that allegations of wrongdoing are false.

88.     On January 26, 2018, Defendant Wooden posted a letter addressed to all employees that allegations of sexual wrongdoing directed at Defendant Wynn were Elaine Wynn's latest litigation strategy since 2011. The letter said in pertinent part:

> "*We are all supportive of Mr. Wynn and his leadership, and while it is unfortunate that the news media has been used to assail Mr. Wynn and us in this way, we are doing everything we can to protect our employees from these attacks and publicity.*"

89.     The letter was false because Defendants had ample knowledge of Defendant Wynn's sexual misconduct and decades of coverups.

90.     Furthermore, gaming investigations and articles detailing Defendant Wynn's sexual misconduct have permeated Defendant Resorts' workplace.

91.     Defendant Resorts has always defended and covered up for Defendant Wynn and discouraged speaking out against him, which Wynn Rosorts' Matthew Maddox admitted in or around April of 2019.

92.     The individual Defendants all conspired and worked together to create a sexual prisonlike atmosphere to prevent female employees from leaving, reporting or taking part in investigations.

93.     Currently, Defendant Resorts continues to outwardly support Defendant Wynn through memorandums and its employees, which is calculated to deter female employees from cooperating or liberating themselves from forced sexual servitude and a sexually hostile environment.

94.     After years of coercion, compelled silence, Plaintiff made a decision to complain to Defendant Resorts' human resources that Defendants' employees refer to Defendant Wynn's female victims as "prostitutes."

95.     Defendants have shown little interest in preventing this from happening in the future.

96.     Defendants created and continue to create a sexually hostile atmosphere toward female victims and employees.

97.     In or around April 5, 2019, Defendant Resorts posted a memorandum related to the Massachusetts' gaming board's investigation.

98.     Thereafter Plaintiff was subjected to comments from coworkers defending Defendant Wynn and calling her and other victims "prostitutes."

99.     Plaintiff complained directly to a spa manager Ambre about the terrible environment continually created by Defendant Resorts by publicly supporting Defendant Wynn regardless of the accusations.

100.    Plaintiff told Ambre that Defendants were torturing her and others by continually engendering hostile treatment of Defendant Wynn's victims.

101.    Defendant Resorts' attitude towards Plaintiff has been and continues to be that she brought this hostile treatment upon herself by discussing Defendant Wynn's treatment of her.

102.    Defendants appear to blame victims for the discriminatory environment that permeates workplace atmosphere to this day.

103.    Defendants continue to allow the abuse of Plaintiff as their employee continue to mentally abuse and call Plaintiff and other female victims prostitutes and sluts.

## CONTINUING VIOLATIONS DOCTRINE AND EQUITABLE ESTOPPEL

104.    The power Defendants wielded – and their ability to conceal evidence, silence employees, and prevent them from complaining about Wynn's sexual predatory behavior and the overall sexually hostile environment – has been documented by both the Nevada and Massachusetts gaming commissions.

105.    As stated supra, Defendants failed to investigate or follow procedures or state laws when receiving credible accusations of sexual assault, misconduct and overall sexual harassment.

. . .

1    106.   Defendants' active abuse of the legal processes and ongoing campaign to

2  prevent employees from reporting sexually discriminating conduct and from filing claims with

3  administrative agencies, law enforcement or other investigative bodies created ongoing hostile

5  environment towards females that entitles Plaintiff and plaintiff class to invoke the continuing

6  violations doctrine.

7                          **FIRST CAUSE OF ACTION**
                   **(Discrimination in violation of Title VII and NRS §608.017)**
8                            **(Against All Defendants)**

9

10    107.   Plaintiff realleges and incorporates by reference as though set forth in full

11  herein paragraphs 1 through 106 above.

12    108.   Defendants failed to initiate any investigations into Defendant Wynn's sexual

13  abuses and the sexually hostile environment and instead covered them up to ensure secrecy, a

14  culture of silence and to create a sexual prisonlike atmosphere.

15    109.   This resulted in a failure to maintain the workplace free of from sexual

16  discrimination.

17    110.   Defendants' failures to investigate, follow its procedures and continued

18  companywide coverups for Defendant Wynn created and continues to create a sexually hostile

19  work environment that continues to this day.

20    111.   As a direct and proximate result of the Defendants' failures, coverups and

21  discrimination, Plaintiff and plaintiff class have sustained injuries and are entitled to recover

22  compensatory and punitive damages, plus attorneys' fees and costs.

23    112.   As a direct and proximate result of these violations, plaintiff and plaintiff class

24  have been damaged in an amount in excess of $15,000.00.

25    113.   As a direct and proximate result of these violations, Plaintiff and plaintiff class

26  members are entitled to damages pursuant to statute, attorney fees and costs.

27  . . .

28  . . .

17

**SECOND CAUSE OF ACTION**
(Violation of 18 U.S.C § 1589)
(Against Defendants Wynn, Resorts, Wynn Las Vegas)

114.   Plaintiff incorporates paragraphs 1 through 113 of the Complaint as though said paragraphs were fully set forth herein.

115.   Defendants are "persons" within the meaning of 18 U.S.C. §1589 et. seq.

116.   Defendant Wynn forced Plaintiff and plaintiff class members to perform sexual services upon demand.

117.   Defendants forced Plaintiff and plaintiff class members into sexual labor by means serious harm, and threats of serious harm to that person.

118.   As described above, Defendants created an atmosphere through abuse of the legal process or by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that, if that they did not perform such labor or services, they would suffer serious harm.

119.   Defendants' conduct, power and ability to blacklist employees throughout Nevada made Plaintiff and plaintiff class members vulnerable to forced servitude and sexual labor.

120.   As a direct and proximate result of these violations, Plaintiff and plaintiff class members have been damaged in an amount in excess of $15,000.00.

121.   As a direct and proximate result of these violations, Plaintiff and plaintiff class members are entitled to damages pursuant to statute, attorney fees and costs.

**THIRD CAUSE OF ACTION**
Violation of 18 USC §§ 1962(c), (b), (d) (Federal RICO)
(Against All Defendants)

122.   Plaintiff incorporates paragraphs 1 through 121 of the Complaint as though said paragraphs were fully set forth herein.

123.   Defendant Wynn's predatory behavior followed a pattern designed for his personal sexual gratification at the expense of Plaintiff and the plaintiff class.

18

124.    Wielding unfettered power in Las Vegas, Defendant Wynn's modus operendi was to use Defendants' employees as sexual slaves. Defendant Wynn has forced and coerced sexual acts by Plaintiff and other employees, which constituted rape and sexual assault.

125.    Defendant Wynn and Defendant Wooden are "persons" within the meaning of 18 U.S.C. §1961(3) who conducted affairs within the meaning of 18 U.S.C. § 1962(c).

126.    Sinatra, Tourek, Schorr, Whennen, Nathan, Defendant Wooden and Defendant Wynn comprised the Wynn Sexual Enterprise.

127.    The Wynn Sexual Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of (i) Defendants, including their employees and agents; (ii) Defendants' executives; (iii) and other unnamed co-conspirators as set forth supra. The Defendant "persons" are distinct from the Wynn Sexual Enterprise.

128.    Wynn Sexual Enterprise's common purpose included but was not limited to creating sexual slaves in violation of 18 USC §1589 and to facilitate sexual assault, battery, harassment and misconduct.

129.    Wynn Sexual Enterprise's common purpose was to destroy and conceal documents, or other evidence and intimidate employees to prevent use of such evidence to report, prosecute, and/or publicize Defendant Wynn's sexual offenses, including, but not limited to, the execution of non-disclosure agreements intended to cover up, squelch and maintain secrecy around Defendant Wynn's offenses, with threat of legal proceedings or financial duress if the victims were to disclose their experiences.

130.    Each member of the Enterprise played a role in directing and participating in the Wynn Sexual Enterprise.

131.    The complicit executives each allowed Defendant Wynn's conduct to go unreported and/or scrutinized and agreed to conceal it so that they could continue to benefit from their lucrative positions.

132.    The co-conspirators provided cover and shield to the Wynn Sexual Enterprise by protecting misconduct.



19

133.   The Wynn Sexual Enterprise falls within the meaning of 18 U.S.C. § 1961(4) and consists of a group of "persons" associated together for the common purpose of: (1) harassing, threatening, misleading, covering up, preventing reporting, disclosure, or prosecution of sexual misconduct, and destroying, mutilating, or concealing records, documents, or other evidence to prevent the use of such evidence to report or prosecute sexual offenses.

134.   Defendants have conducted and participated in the affairs of the Wynn Sexual Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), which includes multiple instances of forced labor, tampering with witnesses or victim in violation of 18 U.S.C. § 1512, and multiple instances of obtaining a victim for the purpose of committing or attempting to commit aggravated sexual abuse in violation of 18 U.S.C. §§ 1590 and 1591 as described above.

135.   The Defendants also communicated by U.S. Mail, by interstate facsimile, and by interstate email with various affiliates, divisions, government agencies and other third parties in furtherance of the scheme. By utilizing the US mail and wires to commit acts identified by the Nevada Gaming Commission, Defendants violated Title 18 USC § 1341, mail fraud and Title 18 USC § 1343, wire fraud. The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct to deceive the public and government agencies about Defendant Wynn's sexual conduct.

136.   Defendants exerted control over the Wynn Sexual Enterprise, and Defendants participated in the operation or management of the affairs of the Wynn Sexual Enterprise.

137.   Within the Wynn Sexual Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis; and used this common communication network for the purpose of enabling Defendant Wynn's sexual activities.

. . .

. . .

138.     The   Defendants   and   co-conspirators   used   the   mail   and   wires   for   the transmission, delivery or shipment of the following that were foreseeably caused to be sent as a result of the Defendants' illegal scheme:

    a.  Agreements to payoff participants and victims;

    b.  False information to Nevada State agencies and Nevada State Gaming
       Commission;

    c.  Wires and mails between Defendants agents and representatives.

139.     As   described   by   two   state   gaming   commissions,   Defendants   utilized   the interstate and mail and wires for the purposes of obtaining money or property by means of the omissions, false pretenses, and misrepresentations described therein.

140.     As described supra, Defendants and the Wynn Sexual Enterprise did engage in activities that affected interstate commerce.

141.     Defendants' scheme and the above described racketeering activities amounted to a common course of conduct intended to cause Plaintiff and plaintiff class and others to hide and conceal Defendant Wynn's conduct. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiff and plaintiff class. Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to Plaintiff's and plaintiff class' business and/or property.

142.     The pattern of racketeering activity alleged herein and Defendant Wynn are separate and distinct from each other. Defendants engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the Wynn Sexual Enterprise.

143.     The Wynn Sexual Enterprise engaged in a pattern of racketeering activity by allowing Defendant Wynn to utilize employees as a stable of sexual slaves and to commit sexual assault, battery and overall sexual misconduct. Wynn Sexual Enterprise's common purpose was to conceal evidence and mislead Plaintiff, plaintiff class and government agencies

to prevent victims from reporting, prosecuting, or disclosing Defendant Wynn's sexual misconduct, Defendants' sexually hostility and sexual trafficking.

144.   As a direct and proximate result of Defendants' violations, Plaintiff's and plaintiff class' business and property has been damaged.

145.   As a direct and proximate result of Defendants' violations, Plaintiff and the plaintiff class have lost wages, business opportunities, income and retirement monies have been significantly reduced.

146.   Plaintiff and the plaintiff class have been damaged in an amount in excess of $15,000.00.

### FOURTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**
**(Against Defendant Wynn, Defendant Wooden, Defendant Resorts,**
**Defendant Wynn Las Vegas)**

147.   Plaintiff incorporates paragraphs 1 through 146 of the Complaint as though said paragraphs were fully set forth herein.

148.   Sinatra, Tourek, Schorr, Whennen, Nathan, Defendant Wooden and Defendant Wynn intended to and did intend to inflict severe emotional distress upon Ms. Schrader.

149.   Defendant Wynn's assault and battery were intentional.

150.   Defendants' concealment and failure to prevent Defendant Wynn's sexual misconduct, sexual assaults, sexual harassment, and sexual discrimination was intentional.

151.   Defendants intended to inflict emotional distress upon Plaintiff.

152.   Defendants' conduct was extreme and outrageous.

153.   As a direct and proximate result of Defendants' intentional acts, Plaintiff have been damaged in an amount in excess of $10,000.00.

. . .

. . .

. . .

22

## FIFTH CAUSE OF ACTION
### Conspiracy
### (Against Defendant Wynn and Defendant Wooden)

154.    Plaintiff incorporates paragraphs 1 through 153 of the Complaint as though said paragraphs were fully set forth herein.

155.    Sinatra, Tourek, Schorr, Whennen, Nathan, Defendant Wooden and Defendants Wynn, intended to and did conspire to conceal sexual harassment, sexual misconduct, sexual assault and sexual discrimination with the intent to harm Plaintiff and the plaintiff class.

156.    By concealing, hiding and manipulating legal proceedings, Defedant Wynn and Defendant Wooden created a sexually hostile work environment, inflicted emotional distress and mental anguish and caused harm to Plaintiff and plaintiff class.

157.    As a direct and proximate result this conspiracy, Plaintiff and plaintiff class has suffered damages in an amount in excess of $15,000.

## SIXTH CAUSE OF ACTION
### Violation of 29 U.S.C. § 206
### (Against Defendant Resorts)

158.    Plaintiff incorporates paragraphs 1 through 157 of the Complaint as though said paragraphs were fully set forth herein.

159.    Plaintiff and the plaintiff class are non-exempt employees and are entitled to the protections of the Fair Labor Standards Act.

160.    In violation of 29 U.S.C. § 206, Defendant Resorts required Plaintiff and the plaintiff class to perform work off-the-clock without pay on a weekly basis.

161.    Defendant Resorts failed to pay numerous persons who are similarly situated to the individually named Plaintiff, Brenna Schrader, for work and labor such others similarly situated performed for Defendant Resorts.

. . .

. . .

23

1   162.   In violation of the FLSA, Defendant Resorts has knowingly and willfully

2   refused to perform its obligations to compensate Plaintiff and plaintiff class for all wages

3   earned and all hours worked.

5   163.   As a direct and proximate result, Plaintiff and plaintiff class have suffered and

6   continue to suffer substantial losses related to the use and enjoyment of such wages, lost

7   interest on such wages, and expenses and attorney fees in seeking to compel Defendant Resorts

8   to fully perform its obligations under federal law, all to their respective damages in amounts

9   according to proof at the time of trial, and within the jurisdiction of the Court.

10   164.   Defendant Resorts violated the FLSA knowingly and willfully, with the

11   wrongful and deliberate intention of injuring Plaintiff and plaintiff class, from improper

12   motives amounting to malice, and in conscious disregard of Plaintiff's and plaintiff class'

13   rights.



14   165.   Plaintiff and plaintiff class are entitled to recover nominal, actual, compensatory

15   and liquidated damages in amounts according to proof at the time of trial, within the

16   jurisdiction of the Court.

17   166.   Plaintiff and plaintiff class are entitled to recover unpaid balances of wages

18   earned, plus interest, penalties, attorney fees, expenses and costs of suit.

19   . . .

20   . . .

21   . . .

22

23

24

25

26

27

28

24

1  WHEREFORE, Plaintiff pray judgment of this Court as follows:

2      1.      General damages in an amount in excess of $15,000.00;

3      2.      Special damages in an amount in excess of $15,000.00;

5      3.      Punitive damages;

6      4.      Treble Damages;

7      5.      Attorney fees and cost of suit; and

8      6.      For such other relief as is just and proper.

9  DATED this 26th day of September 2019

10                        **RICHARD HARRIS LAW FIRM**

11

12                      /s/ *Burke Huber*

13                      _____

14                      BURKE HUBER ESQ.
Nevada Bar No. 10902

15                      801 S. 4th Street
Las Vegas, NV 89101

16                      *Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28

25