UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Brenna Schrader,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Wynn Las Vegas, LLC, et al.,<br><br>　　　　　　Defendants. | Case No. 2:19-cv-02159-JCM-BNW<br><br><br>**REPORT AND RECOMMENDATION & ORDER** |

Presently before the Court are two motions. Plaintiff filed a motion to amend her complaint. ECF No. 69. Individual defendants Maurice Wooden and Stephen Alan Wynn filed responses at ECF Nos. 74 and 75, respectively. The corporate defendants, Wynn Las Vegas, LLC (WLV) and Wynn Resorts, Ltd. (WR), filed a response at ECF No. 72. These corporate defendants also filed a motion to strike Plaintiff's motion to amend. ECF No. 73. Plaintiff filed a combined response to the motion to strike and reply in support of her motion to amend at ECF No. 80. Defendants did not file a reply in support of their motion to strike.

The Court will provide a short background and then address the motion to strike, followed by the motion to amend.

## I. Background

This case is a putative class action. ECF No. 69-1. Plaintiff generally alleges as follows: Defendants engaged in decades of sexual misconduct at WLV and WR and covered up this conduct. Many current and former female employees, including Plaintiff, were sexually harassed, sexually assaulted, and forced into sexual servitude. More specifically, Plaintiff alleges that she and others were forced to perform sex acts on Defendant Stephen Wynn and VIP clients at WR and WLV. This, and other conduct, created a hostile work environment. It also had the effect of denying these female employees the same terms and conditions of employment as male employees.

As a result, Plaintiff filed this suit in state court on September 26, 2019. ECF No. 1-1. Defendants removed the case to federal court in December of 2019 and filed multiple motions to dismiss and a motion for a more definite statement in March of 2020. *Id.*; ECF Nos. 33, 35, 36, 39. These motions remain pending. However, in July, Plaintiff filed the motion to amend now before the Court. *See* ECF No. 69.

## II. Motion to Strike (ECF No. 73)

Defendants argue that Plaintiff's motion to amend should be stricken because it is an improper surreply to Defendants' motions to dismiss. ECF No. 73. According to Defendants, it should be stricken under Local Rule 7-2(b), which provides that surreplies are not permitted without leave of court. *Id.* at 3-6.

Plaintiff opposes Defendants' motion to strike. ECF No. 80 at 3. Plaintiff argues that her motion to amend is not a surreply, and the Federal Rules of Civil Procedure expressly allow her to file such a motion. *Id.*

Plaintiff is correct. Federal Rule of Civil Procedure 15 allows litigants to file motions to amend. And Rule 15 explicitly contemplates that some motions to amend will be filed after responsive pleadings (such as motions to dismiss) are filed. *See* Fed. R. Civ. P. 15(a). Plaintiff followed Rule 15 by seeking leave to amend and Local Rule 15-1 by attaching her proposed amended complaint. *See* ECF No. 69. Accordingly, Plaintiff's motion to amend is not a surreply and will not be stricken. Defendants' motion to strike (ECF No. 73) is denied.

**III. Motion to Amend (ECF No. 69)**

    **A. Legal Standard**

Generally, a party may amend its pleading once "as a matter of course" within twenty-one days of serving it, or within twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*.

"The court considers five factors [under Rule 15] in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). "The standard for granting leave to amend is generous." *Id.* And, critically, "the nonmovant bears the burden of showing why amendment should not be granted." *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed. Cir. 1986); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) ("party opposing amendment bears the burden of showing prejudice"); *United States for use & benefit of Source Helicopters, Div. of Rogers Helicopters, Inc. v. Sayers Constr., LLC*, No. 219CV1602JCMEJY, 2020 WL 3643431, at *1 (D. Nev. July 6, 2020) ("The party opposing amendment holds the burden to demonstrate futility."); *Akinola v. Severns*, No. 3:14-CV-00222-HDM, 2015 WL 456535, at *2 (D. Nev. Feb. 2, 2015) ("party opposing the amendment carries the burden of showing why leave to amend should not be granted.").

    **B. Defendants' Arguments Regarding Why Amendment Should Be Denied**

As detailed below, Defendants make several arguments regarding why amendment should be denied. As the nonmovant, they bear the burden of showing that amendment should not be granted. *Senza-Gel Corp.*, 803 F.2d at 666. However, many of Defendants' arguments are severely underdeveloped. In many instances, Defendants' representation of the rule and legal analysis is incomplete or misleading. In other instances, Defendants do not provide any rule or citation to authority. The Court cannot manufacture arguments for litigants; arguments that are not developed are waived. *See Maves v. First Horizon Home Loans*, 461 F. App'x 636, 638 (9th

Cir. 2011); (undeveloped arguments are waived); *Independent Towers v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003) (courts cannot manufacture arguments for litigants); *United States v. Alonso*, 48 F.3d 1536, 1544 (9th Cir. 1995) (courts frequently refuse to address issues that litigants fail to develop in their briefs). Accordingly, the Court dismisses many of Defendants' arguments because Defendants have not carried their burden to show that amendment should be denied.[1]

### 1. Plaintiff's First Claim for Title VII Sexual Harassment

Defendants make two arguments regarding why Plaintiff fails to state a Title VII claim.

First, Defendants argue that Plaintiff fails to state a claim because she fails to attach her EEOC right to sue letter to establish that her suit is timely. ECF No. 72 at 8. Defendants, however, do not establish that attaching an EEOC right to sue letter is required. The authority that Defendants rely on this for this argument does not stand for the proposition that a plaintiff must attach a right to sue letter to establish that their suit is timely.[2] *See* ECF No. 72 at 8. Rather, Defendants' authority stands for the proposition that plaintiffs cannot avoid a motion to dismiss by failing to allege when they received their right to sue letter or attaching the letter. *See id*. Here, Plaintiff alleges that she received her right to sue letter on or around July 1, 2019. ECF No. 69-1 at 23. Plaintiff filed this action (originally in state court) on September 26, 2019. ECF No. 1-1 at 2. Under 42 U.S.C. § 2000e-5(f)(1), a plaintiff must file suit within 90 days of receiving a right to sue letter. Accordingly, by alleging that she received her right to sue letter on July 1, 2019 and by filing suit on September 26, 2019, Plaintiff sufficiently alleges that she timely filed suit.

Second, Defendants argue that Plaintiff's Title VII "sexual harassment hostile work environment claim" fails because she has not pled facts sufficient to meet all the elements of her claim. ECF No. 72 at 8-9. First, the Court rejects this argument because Plaintiff's Title VII claim does not appear to be a hostile work environment claim but rather a discrimination claim. *See*

---

[1] The Court also notes that Plaintiff's briefing was often also unhelpful in resolving the issues presented. In the future, the Court asks that both parties fully and fairly address the relevant issues by providing accurate rule statements and analyses of the law and facts.

[2] The Court has not located any controlling Ninth Circuit authority that provides this either.

ECF No. 69-1 at 33. Second, even if it were a hostile work environment claim, the Court would still reject Defendants' argument. Defendants appear to argue that Plaintiff has not pled that she was subjected to verbal or physical conduct because of her sex or that any of the conduct was unwelcome or was sufficiently severe and pervasive to alter the terms and conditions of her employment. ECF No. 72 at 9. Defendants appear to draw this conclusion by only analyzing the factual allegations specifically laid out in the first cause of action and disregarding the other factual allegations in the complaint. *See id.* at 8-9. However, Plaintiff incorporated all the factual allegations in the complaint into her first cause of action by reference. ECF No. 69-1 at 33. Without analyzing Plaintiff's other factual allegations, Defendants failed to meet their burden to show that Plaintiff does not state a claim upon which relief can be granted.

    **2. Plaintiff's Second Claim under the Trafficking Victims Protection Act of 2000 (18 U.S.C. § 1589)**

Defendants argue that Plaintiff fails to state a claim under 18 U.S.C. 1589, which prohibits forced labor. ECF No. 72 at 9-10. Defendants' argument is one paragraph. *Id.* The crux of Defendants' argument is that if you compare Plaintiff's complaint to her proposed amended complaint, not much has changed. *See id.* However, Defendants do not explain what is deficient about the original or proposed amended complaint (or why amendment would be futile). *See id.* The closest Defendants come to identifying why Plaintiff failed to state a claim is by stating that Plaintiff "does not identify any of the 'important people' who allegedly made such 'overt threats,' what specifically was threatened, when the threats were made, or any other information to enable Defendants and the Court to assess the plausibility of the allegations." *Id.* However, without explaining what Plaintiff is required to plead to state a claim under 18 U.S.C. § 1589 and analyzing Plaintiff's pleading in that light, the Court cannot find that Defendants carried their burden to show that amendment would be futile.

### 3. Plaintiff's Third, Fifth, and Sixth Claim for Violations of the Federal and Nevada RICO Acts

As an initial matter, Defendants argue that Plaintiff's claims under the federal and Nevada RICO Acts fail to state a claim for the reasons discussed in their motion to dismiss. ECF No. 72 at 10. However, Defendants do not cite to their arguments in their motion to dismiss or otherwise explain these arguments. *See id.* Under Local Rules 7-2(d) and 7-2(a), Defendants are required to cite authority for their arguments and include all such authority in one document. Accordingly, under Local Rules 7-2(d) and 7-2(a), the Court dismisses this argument.

Defendants next argue that Plaintiff's RICO Act claims fail because Plaintiff lacks standing to assert them. *Id.* Defendants' argument seems to be that Plaintiff has not alleged an injury sufficient for standing purposes. *Id.* Defendants state that Plaintiff's alleged injuries are depressed wages and lower benefits. *Id.* Defendants argue that depressed wages for sexual services do not constitute an injury to business or property (which is required to state a RICO claim). *Id.* Defendants also argue that Plaintiff has not pled what benefits she lost because of Defendants' alleged RICO violations, but to the extent it is lost vacation time, this is the same as lost wages. *Id.*

Defendants have not carried their burden to show that Plaintiff failed to establish an injury for standing purposes. As explained below, Defendants' argument is based on an incomplete summary of Plaintiff's factual allegations and an incomplete analysis of the law.

Regarding Plaintiff's factual allegations, Plaintiff did not only plead depressed wages and lost benefits as her injuries stemming from Defendants' alleged RICO violations (as Defendants represent in their brief). *See* ECF No. 72 at 10. She also pled lost contracts, job opportunities, business opportunities, and FMLA leave, as well as interference with prospective business relations. ECF No. 69-1 at 36, 39, 40.

Regarding the law, Defendants do not fully explain why each of Plaintiff's alleged injuries fails to establish standing. Regarding Plaintiff's alleged injuries of lost contracts, job opportunities, business opportunities, and FMLA leave (as well as Defendants' interference with prospective business relations), Defendants simply do not analyze how these injuries are

insufficient to establish standing. Regarding lost wages, Defendants' analysis of the law is incomplete and falls short of establishing that Plaintiff lacks standing. Indeed, lost wages *can* be an injury sufficient to establish standing to assert a RICO claim. The case cited by Defendants, *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005), does *not* stand for the opposite proposition. It does not even stand for the proposition that not being paid for sexual services cannot establish an injury sufficient for standing purposes. Rather, *Diaz* explained that to determine whether there has been an injury to business or property, the court must look at state law. *Id.* at 900 ("Without a harm to a specific business or property interest-a categorical inquiry typically determined by reference to state law-there is no injury to business or property within the meaning of RICO."). *Diaz* discussed an Illinois case that determined that not being paid for sexual services was not a cognizable injury under *Illinois* law. *Id.* However, in *Diaz* itself, the Ninth Circuit held that the plaintiff's alleged injuries (interference with contract and prospective business relationship) were cognizable under the relevant state law (California). *Id.* Here, Defendants have not analyzed whether Plaintiff's alleged injuries, including lost wages, are cognizable under Nevada law.[3] Accordingly, Defendants have not established that Plaintiff failed to allege an injury sufficient for standing purposes.[4]

### 4. Plaintiff's Seventh Claim for Intentional Infliction of Emotional Distress

Defendants next argue that Plaintiff fails to state a claim for intentional infliction of emotional distress (IIED). ECF No. 72 at 12. Defendants make three arguments regarding why Plaintiff's IIED claim is deficient.

First, Defendants appear to argue that Plaintiff's IIED claim is preempted by the Nevada Industrial Insurance Act (NIIA). *See id.* However, Defendants do not explain what is required for

---

[3] The Court also notes that Plaintiff appears to plead not only lost wages because of not being paid for her sexual services, but also lost wages for time she could have been working and earning wages but was not as a result of the alleged sexual abuse. *See, e.g.*, ECF No. 69-1 at 21.

[4] Defendants also include a paragraph about Plaintiff's allegations related to the Massachusetts Gaming Commission and Nevada Gaming Control Board. ECF No. 72 at 11. The point of this paragraph is not entirely clear but appears to be that these allegations are also insufficient to establish Plaintiff's injury for standing purposes. *See id.* ("[T]hese allegations are insufficient to meet Plaintiff's burden because none of them refer to specific conduct or harm to which she was allegedly subjected."). The Court considered this paragraph, but it does not change the Court's analysis or conclusion that Defendants failed to establish that Plaintiff lacks standing.

a claim to be preempted by NIIA. Defendants simply write that the "weight of authority" finds that "sexual assault falls within the scope of NIIA's preemption." *Id.* However, the cases that Defendants cite do not stand for this blanket proposition. *See, e.g., Wood v. Safeway, Inc.*, 121 Nev. 724, 121 P.3d 1026, 1032 (2005) (recognizing that "the NIIA does not make an employer absolutely liable and, therefore, absolutely immune from suit for any and all on-the-job injuries suffered by its employees. Instead, injuries that fall within the ambit of the NIIA's coverage are those that both arise out of the employment and occur within the course of that employment."). Defendants have not provided any analysis of whether Plaintiff's claims arose out of and occurred within the course of her employment. The Court will not manufacture arguments for Defendants. Accordingly, Defendants have not met their burden to show that Plaintiff's IIED claim is preempted by NIIA.

Second, Defendants argue that Plaintiff's IIED claim is preempted by NRS § 613.310 et seq. ECF No. 72 at 12. As is relevant here, NRS § 613.330 generally prohibits employers from discriminating against employees based on sex. Defendants cite four cases for the proposition that this Nevada statute provides the exclusive remedy for tort claims premised on illegal employment practices. ECF No. 72 at 12. The Court reviewed these cases and others. While it appears that NRS § 613.330 may preempt tort claims that arise out of *discriminatory* conduct (or conduct that is otherwise prohibited by the statute), it does not appear that this statute preempts tort claims that arise out of conduct not prohibited by the statute.[5] *See* NRS § 613.330.

Here, as the basis for Plaintiff's IIED claim, she alleges that: Mr. Wynn sexually abused her; Mr. Wynn conspired with VIP guests to sexually abuse her; and the other Defendants (Mr. Wooden, WR, and WLV) knew about this conduct, concealed it, and facilitated it for profit. ECF No. 69-1 at 41. Defendants have not explained to the Court (and it is not otherwise clear to the

---

[5] The Court reviewed *Schaefer v. Diamond Resorts Int'l Mktg.*, No. 2:14-cv-01900-GMN-CWH, 2015 U.S. Dist. LEXIS 55511, at *17 (D. Nev. Apr. 28, 2015), which Defendants cited. *Schaefer* does provide, as quoted by Defendants, that NRS § 613.330 et seq. "'provides the exclusive remedy for tort claims premised on illegal employment practices.'" *Id.* at *17. However, the case *Schaefer* quotes for this proposition cites no authority for it (and the Court has not located any either). *See Brinkman v. Harrah's Operating Co., Inc.*, No. 2:08-cv-00817-RCJ-PAL, 2008 U.S. Dist. LEXIS 123992, at *4-5 (D. Nev. Oct. 16, 2008). Further, at least in this context, this rule appears inconsistent with Nevada Supreme Court cases discussing NRS § 613.330 and the text of the statute itself.

Court) how all of this conduct arises out discriminatory conduct (as opposed to other prohibited conduct, such as the RICO violations Plaintiff alleges). It is also unclear to the Court how NRS § 613.330 would preempt claims against Mr. Wynn and Mr. Wooden, who were never Plaintiff's employers. *See Schaefer*, 2015 U.S. Dist. LEXIS 55511, at *17-18 (dismissing IIED claim against the employer but not an individual defendant).[6] Accordingly, Defendants failed to carry their burden to show how NRS § 613.330 preempts Plaintiff's IIED claim.

Third, Defendants argue that Plaintiff's IIED claims are subject to Nevada's two-year statute of limitations. ECF No. 72 at 12-13. Defendants cite no authority for this argument. *See id.* Additionally, Plaintiff pled that she is entitled to equitable tolling of the statute of limitations. ECF No. 69-1 at 24-26. Defendants have not addressed (let alone established) that the statute of limitations should not be tolled. Accordingly, Defendants failed to carry their burden to establish that Plaintiff's claims are barred by the statute of limitations.

### 5. Plaintiff's Ninth Claim for Violations of the Fair Labor Standards Act and NRS Ch. 608

Defendants make two arguments regarding why Plaintiff's Fair Labor Standards Act (FLSA) and NRS Ch. 608 causes of action fail to state a claim.

First, Defendants argue that Plaintiff's FLSA and NRS Ch. 608 claims are deficient. ECF No. 72 at 13. Why these claims are allegedly deficient is not entirely clear from Defendants' brief (though it appears Defendants are alleging Plaintiff did not plead facts sufficient to show a joint employer relationship between WR and WLV). *See id.* Defendants point out facts that Plaintiff did not plead but Defendants never provide the Court with the rule or legal framework within which the Court should analyze this issue. *See id.* Defendants do not explain what a joint employer relationship is, why it is relevant to Plaintiff's claims, or why these claims should be dismissed against both WR and WLV when, presumably, Plaintiff worked for at least one of these

---

[6] Moreover, and as discussed *infra*, Defendants appear to contend that either WLV or WR (or both) were *not* Plaintiff's employers. If this is so, then the statute would not preempt tort claims against at least one of these entities. Again, however, Defendants do not explain this issue.

Defendants. *See id.* Again, Defendants failed to develop a coherent argument and carry their burden to show that amendment would be futile.

Second, Defendants argue that Plaintiff's FLSA claim is deficient because Plaintiff fails to allege sufficient facts to assert a minimum wage or overtime claim under the FLSA. *Id.* at 14. Defendants argue that while Plaintiff alleges she was forced to work off the clock and without pay, she does not allege that her wages fell below the statutory minimum ($7.25 per hour) or that she was forced to work overtime without compensation, as required to state a FLSA claim. *Id.*

Defendants are correct that Plaintiff fails to state a minimum wage or overtime claim under the FLSA. Regarding pleading a minimum wage claim, "a complaint must allege that the plaintiff's weekly wages fall below the statutory minimum." *Samuels v. We've Only Just Begun Wedding Chapel, Inc.*, No. 2:13-cv-00923-APG-PAL, 2014 U.S. Dist. LEXIS 46380, at *8 (D. Nev. Mar. 31, 2014); *see also Levert v. Trump Ruffin Tower I, LLC*, No. 2:14-CV-01009-RCJ, 2015 WL 133792, at *2 (D. Nev. Jan. 9, 2015) ("A violation of the FLSA occurs only when the total weekly wage paid by the employer, 'when averaged across the[ ] total time worked,' falls below the minimum weekly requirement."). Here, Plaintiff alleges only the legal conclusion that WR and WLV failed to pay her and others in the putative class "in violation of federal minimum wage laws." ECF No. 69-1 at 42. However, Plaintiff does not plead that her weekly wages fell below the statutory minimum. Regarding pleading an overtime claim, "[A] plaintiff . . . must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644–45 (9th Cir. 2014), *as amended* (Jan. 26, 2015). Plaintiff does not plead this. She only pleads that she and others were damaged by Defendants' "common practice of failing to pay overtime compensation to employees." ECF No. 69-1 at 6. Accordingly, Plaintiff's factual allegations are insufficient to state a minimum wage or overtime claim under FLSA. The Court will recommend that Plaintiff's attempt to amend her Ninth Cause of Action for violation of the FLSA (29 U.S.C. § 206) be denied without prejudice.

### 6. Mr. Wooden Argues that Amending Claims Against Him Would be Futile

Mr. Wooden opposes Plaintiff's motion to amend because he argues it would be futile. ECF No. 74. As an initial matter, Mr. Wooden states that Plaintiff's allegations against him are haphazard, nebulous, "broad sweeping statements." *Id.* at 6. He also argues that Plaintiff does not allege any direct contact between Mr. Wooden and Plaintiff and that Plaintiff fails to allege much "precise" conduct that Mr. Wooden engaged in. *Id.* at 6, 7. The Court will not analyze these general statements (and others like them) except to say that they do not establish how Plaintiff allegedly fails to state a claim or that amendment would be futile.

Next, Mr. Wooden argues that Plaintiff fails to state an IIED claim against him. *Id.* at 7. Mr. Wooden argues that a plaintiff cannot allege an IIED claim if there is no allegation of conduct directed at the plaintiff and here, Plaintiff does not allege that Mr. Wooden engaged in any conduct directed at her or the putative class. *Id.* Mr. Wooden cites one case for his argument, *Dove v. PNS Stores, Inc.*, 982 F. Supp. 1420, 1425 (C.D. Cal. 1997). *Dove*, however, dealt with IIED claims under California law, not Nevada law. *Id.* Accordingly, Mr. Wooden failed to carry his burden to show that Plaintiff has not stated an IIED claim under Nevada law.

Mr. Wooden's next argument is that Plaintiff's IIED claim cannot be "supported by Plaintiff's mere and vague allegations that 'Defendants' were part of the management team who purportedly failed to act in within [sic] the employment-relationship context (ECF No. 69-1 at ¶¶214)." ECF No. 74 at 7-8. The paragraph of Plaintiff's proposed amended complaint that Mr. Wooden cites provides, "Defendants' concealment and encouragement of the conduct described is outrageous and beyond the bounds of decency and regarded as utterly intolerable in a civilized society." ECF No. 69-1 at ¶ 214. Put simply, Mr. Wooden's argument does not accurately capture the very allegation he cites to, and Plaintiff pled other conduct that Mr. Wooden engaged in. Accordingly, the Court is unpersuaded by this argument.

Mr. Wooden also argues that the Court may properly conclude that the alleged contents of the memo he posted are not objectively extreme and outrageous conduct and thus, dismiss Plaintiff's IIED claim. ECF No. 74 at 8. Plaintiff alleges that after a Wall Street Journal article broke about Mr. Wynn's alleged widespread sexual abuse, Mr. Wooden posted a memo stating that

"Mr. Wynn must be supported and everyone should stay the course." ECF No. 69-1 at 17. The Court declines to find that the contents of this memo were not objectively extreme and outrageous. In a different context, its contents may not be extreme. However, in this context (where several women allege that they were sexually assaulted by Mr. Wynn), a reasonable person could find that a memo directing people to support Mr. Wynn was extreme and outrageous.

Next, Mr. Wooden argues that Plaintiff's RICO Act claims fail for two reasons. ECF No. 74 at 8.

First, Mr. Wooden argues that as an employee of the WLV and WR, he cannot, as a matter of law, conspire with the co-defendants. ECF No. 74 at 8-9. The cases Mr. Wooden relies on, however, provide a more nuanced rule than an employee cannot conspire with its employer. *See id.* at 9. These cases provide that an employee cannot conspire with his employer when "they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage" or put another way, "employers and employees cannot conspire, in the legal sense, within the scope of employment." *Id.* Mr. Wooden does not address the nuance of the cases he cites. *See id.* Assuming that all of Plaintiff's allegations are true, as he must, Mr. Wooden does not explain how he and his co-defendants would have been acting in their official capacities on behalf of the corporation (in the scope of their employment) allegedly forcing women into "sexual servitude and forced sexual labor." *See* ECF No. 69-1 at 4.

Second, Mr. Wooden argues that Plaintiff's RICO Act claims fail because they are vague and lack the requisite specificity to state a RICO claim. *Id.* at 9. Mr. Wooden's argument is one sentence, followed by a string of case cites and a footnote providing the elements of a RICO claim and the statement that Plaintiff's proposed amended complaint fails to plead each element "as to Wooden." *See id.* Again, this argument is undeveloped and, in essence, asks the Court to go hunting through the proposed amended complaint to locate Plaintiff's alleged pleading deficiencies. The Court declines to do Defendant's job.[7]

---

[7] In the future, the Court expects that a sophisticated litigant would provide the rule (here, what a plaintiff is required to plead to state a RICO claim), a fair summary of what Plaintiff has pled as it relates to each element, and an

### 7. Whether Plaintiff's Motion to Amend Should be Denied Because of Prejudice

Mr. Wooden argues that Plaintiff's motion to amend should be denied because it is prejudicial to Defendants. *Id.* at 10. Mr. Wooden writes that Defendants are prejudiced by Plaintiff's motion to amend because Defendants have already spent resources drafting multiple motions to dismiss and a motion for a more definite statement. *Id.* Mr. Wooden suggests that all the information and exhibits contained in Plaintiff's proposed amended complaint were available to her when she filed her original complaint. *Id.* Additionally, Plaintiff allegedly "snubbed" Defendants efforts to meet and confer after Plaintiff filed her original complaint and Defendants identified deficiencies. *Id.* Had Plaintiff met and conferred with Defendants, the parties may have been able to avoid filing many of the motions before the Court. *Id.* Accordingly, Defendants argue that the motion to amend should be denied because of the resources they expended.[8]

The Ninth Circuit has considered this argument and rejected it. In *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016), the defendants' argument was similar to the argument made in this case: Defendants would be prejudiced by amendment because they already filed motions to dismiss and, had plaintiff announced his intent to seek leave to amend during the meet and confer, the defendants could have avoided the costs associated with motions to dismiss. In rejecting this argument, the Ninth Circuit held that in the absence of bad faith, "litigation expenses incurred before a motion to amend is filed do not establish prejudice." *Id.* Here, Defendants have not alleged, let alone proved, that Plaintiff acted in bad faith in filing her motion to amend. Accordingly, the Court does not find Defendants are prejudiced by Plaintiff's motion to amend.

Mr. Wooden also requests that the Court award attorneys' fees in connection with his dispositive motions based on the alleged prejudice he suffered. ECF No. 74 at 10-11. In the Court's discretion, and because it does not find prejudice, the Court declines to award fees to Mr. Wooden.

---

analysis of how, specifically, plaintiff's pleading is deficient as to each specific element defendant alleges is insufficiently pled.

[8] Mr. Wynn makes a similar argument in his opposition to Plaintiff's motion to amend. *See* ECF No. 75 at 17-18.

### 8. Whether Plaintiff States a Forced Labor Claim Against Mr. Wynn

Mr. Wynn argues that Plaintiff's claim under 18 U.S.C. § 1589 fails to state a claim and amendment would be futile. *See* ECF No. 75 at 7-9. Mr. Wynn argues that Plaintiff has not rebutted Mr. Wynn's argument (in his motion to dismiss) that Plaintiff was free to leave her job at any time. *Id.* at 7. In fact, Mr. Wynn argues that Plaintiff admitted the opposite by pleading that Defendants attempted to create such a hostile work environment that Plaintiff would quit. *Id.* at 7-8. Relatedly, Mr. Wynn argues that Plaintiff has not alleged that she was forced to stay on as an employee against her will. *Id.* at 8. Mr. Wynn also argues that Plaintiff did not allege that anyone threatened to harm her if she left her job. *Id.* at 8. Mr. Wynn concludes that "Plaintiff instead chose to continue to work at WLV, apparently even to this day, [which] establishes that her allegations do not amount to forced labor." *Id.* at 8.

Mr. Wynn's arguments fail for two reasons. First, this argument is underdeveloped. Mr. Wynn does not explain what 18 U.S.C. § 1589 provides or explain what a plaintiff must plead to state a claim under it. Second, Mr. Wynn's argument is based on an incorrect premise, namely, that Plaintiff alleges she was forced to work for *WLV*. *See id.* at 8 (Plaintiff "had many opportunities to cease working at WLV."). Plaintiff is not alleging that she was forced to work at WLV (or WR), but rather that she was forced into sexual servitude while employed there.[9] *See* ECF No. 80 at 9-10; ECF No. 69-1 at 34-35 (Defendants forced Plaintiff into "sexual labor" by means of serious harm, threats of harm, abuse of legal process, sexual assault, etc.). Mr. Wynn's argument about Plaintiff being forced to work at WLV attacks a straw man; it does not analyze whether Plaintiff states a claim under 18 U.S.C. § 1589 based on her actual theory of liability. As such, Mr. Wynn did not carry his burden to show that Plaintiff fails to state a claim and that amendment should be denied.[10]

---

[9] Plaintiff alleges that Mr. Wynn ordered her to perform a sexual act on him in December 2012. *Id.* at 16. Fearing for her safety and financial future, she complied. *Id.* Afterwards, the spa director warned Plaintiff against saying no to Mr. Wynn or complaining about him. *Id.* Thereafter, Plaintiff became a "sexual servant" to Mr. Wynn and VIP guests, as she was told that she could not say no to or refuse VIP guests either. *Id.* at 16-17.

[10] Plaintiff's allegation that "Defendants are attempting to create an atmosphere so hostile that Plaintiff will be forced to resign" does not change the Court's analysis. *See* ECF No. 69-1 at 20. Read in context, Plaintiff is alleging that since Mr. Wynn's alleged sexual abuse came to light and he resigned, WR and WLV are attempting to create a hostile work environment so Plaintiff will resign. *Id.* at 18-20. Plaintiff's allegations of past, force sexual labor are

Case 2:19-cv-02159-JCM-BNW    Document 81    Filed 12/09/20    Page 15 of 18

### 9. Whether Plaintiff's RICO Act, IIED, and Conspiracy Claims Are Barred by the Statute of Limitations

Mr. Wynn next argues that Plaintiff's RICO Act, IIED, and conspiracy claims are barred by their respective statute of limitations. ECF No. 75 at 9. Mr. Wynn cites to his motion to dismiss for this argument and states that like Plaintiff's complaint, her proposed amended complaint only alleges he engaged in specific misconduct in 2012 and 2015. Accordingly, he concludes that the statute of limitations has run for these claims. *See id.* Seeming to contradict himself, he then writes that Plaintiff attempts to avoid the statute of limitations by alleging that Mr. Wynn sexually abused Plaintiff and other female employees from 2000 to 2018. *Id.* He argues that this allegation does not, however, save Plaintiff's claims from the statute of limitations because (1) he did not open WLV until 2005 and (2) Plaintiff is "clearly" trying to allege misconduct towards other employees (who are not part of the class yet) to save her own claims (but Plaintiff must be able to independently bring claims before she can represent a class). *Id.* at 9-10.

Again, Mr. Wynn's arguments are flawed for several reasons. First, Local Rule 7-2(a) requires that all points and authorities must be combined into a single document. Mr. Wynn has not followed this rule by citing to his motion to dismiss in lieu of fleshing out his statute of limitations arguments in this brief. *See id.* He does not even cite to the statutes of limitation that he believes apply. On this basis alone, the Court dismisses his argument. Second, even assuming that the statute of limitations would have barred Plaintiff's claims as originally pled, Mr. Wynn does not sufficiently explain why her new allegations do not save her claims. More specifically, as Mr. Wynn acknowledges, Plaintiff now pleads that Mr. Wynn sexually abused Plaintiff and other employees from 2000 to 2018. *Id.* at 9. Mr. Wynn's argument that he did not open WLV until 2005 does not explain why Plaintiff's claims would not survive the statute of limitations. *See id.* Indeed, his argument does not even address the statute of limitations but rather comments on standing. *See id.* ("Plaintiff offers no explanation as to how she has standing to assert claims against Mr. Wynn, WLV and/or WR for alleged acts that occurred years before the hotel and casino opened."). His

---

not inconsistent with allegations that WLV and WR may now be creating a hostile work environment in the hopes that she will quit.

Page 15 of 18

argument that Plaintiff is trying to assert claims on behalf of other women to save her own claims from the statute of limitations fairs no better. Plaintiff pled that "Mr. Wynn sexually abused *Plaintiff* and other female employees from approximately 2000 to 2018." ECF No. 69-1 at 41 (emphasis added). Mr. Wynn does not explain why this pleading is deficient; Plaintiff is pleading that she (and others) were abused from 2000 to 2018. *See also id.* at 17 ("From 2012 through 2018, Plaintiff not only performed sexual acts upon Mr. Wynn on various occasions, but she was required to be on call to perform sexual acts for Mr. Wynn, if he so desired."). Again, Mr. Wynn failed to carry his burden to show why amendment should not be granted.

Because Mr. Wynn failed to carry his burden to show that the statute of limitations bars Plaintiff's RICO Act, IIED, and conspiracy claims, the Court need not address Mr. Wynn's arguments about why the continuing violations doctrine, equitable estoppel, and equitable tolling do not apply.

### 10. Whether Plaintiff Sufficiently Alleges a Federal RICO Act Claim

Mr. Wynn next argues that Plaintiff's proposed amended complaint lacks factual support for most of the predicate acts. ECF No. 75 at 14-15. Again, Mr. Wynn cites to his motion to dismiss but does not flesh out his argument in his response brief. He cites no authority for his argument that Plaintiff fails to state a RICO Act claim. *See id.* Accordingly, under Local Rules 7-2(a) and 7-2(d), the Court dismisses these arguments. Mr. Wynn failed to carry his burden to show that amendment should be denied.

### 11. Whether Plaintiff Sufficiently Alleges a Nevada RICO Claim

Mr. Wynn argues that Plaintiff's Nevada RICO claim fails because she does not allege sufficient facts to state a claim for relief. *See* ECF No. 75 at 15. Mr. Wynn argues that many of the predicate acts are insufficiently alleged. *See id.* at 15-16. However, Mr. Wynn fails to cite any authority for many of his arguments, including what a Plaintiff must plead in relation to these predicate acts. *See id.* Accordingly, the Court will not further address these arguments. *See* LR 7-2(d). Mr. Wynn does, however, make a few specific arguments related to why Plaintiff's Nevada RICO claim allegedly fails. The Court will address these arguments.

First, Mr. Wynn argues that "under the elements for civil liability for RICO, a plaintiff must not have participated in the commission of the predicate act." ECF No. 75 at 15. Mr. Wynn argues that because Plaintiff is claiming lost wages for unpaid sexual labor, she is a participant in the predicate act. *Id.* at 16. Mr. Wynn is correct that to recover under Nevada RICO, a plaintiff must not be a participant in the predicate act. *See Allum v. Valley Bank of Nevada*, 109 Nev. 280, 283 (1993). However, Mr. Wynn has not demonstrate that Plaintiff was a participant in all the predicate acts she alleges (which include prostitution, forced labor, sex trafficking, sexual assault, witness intimidation, money laundering, wire fraud and other illegal activities) such that she cannot bring a Nevada RICO claim. *See* ECF No. 69-1 at 35-36. Further, Mr. Wynn has not cited authority for the proposition that someone is still a "participant" in the predicate act when they allege that they were forced into it, as is the case here. The Court will not hold that an alleged victim of forced sexual labor is a participant in the alleged RICO violation in the absence of an explanation and authority supporting this conclusion.

Mr. Wynn next argues that Plaintiff fails to plead the predicate act of facilitating sex trafficking under NRS 201.301. ECF No. 75 at 16. Mr. Wynn argues that this predicate act requires an element of transportation for the purposes of inducing prostitution, but nowhere in Plaintiff's proposed amended complaint does she allege this. *Id.* Mr. Wynn appears to be correct that Plaintiff does not allege the requisite transportation or travel required by NRS 201.301 to plead facilitating sex trafficking as a predicate offense. *See* ECF No. 69-1. Accordingly, the Court will recommend that Plaintiff's motion to amend be denied without prejudice to the extent Plaintiff attempts to plead a Nevada RICO claim based on the predicate offense of facilitating sex trafficking.

### 12. Whether Plaintiff Sufficiently Alleges an IIED Claim

Mr. Wynn argues that Plaintiff should not be allowed to amend her IIED claim. *See* ECF No. 75 at 16-17. Again, Mr. Wynn cites to his motion to dismiss but does not flesh out his argument in his response brief. He cites no authority for his argument that Plaintiff fails to state an IIED claim. *See id.* Accordingly, under Local Rules 7-2(a) and 7-2(d), the Court dismisses these arguments. Mr. Wynn failed to carry his burden to show that amendment should be denied.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' motion to strike (ECF No. 73) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion to amend (ECF No. 69) is GRANTED in part and the Court will recommend that it be DENIED in part.

IT IS FURTHER ORDERED that Plaintiff's motion to amend is granted except to the extent that the Court recommends that it be denied.

IT IS RECOMMENDED that Plaintiff's motion to amend be denied without prejudice to the extent she attempts to amend her Ninth Cause of Action for violation of the FLSA (29 U.S.C. § 206).

IT IS RECOMMENDED that Plaintiff's motion to amend be denied without prejudice to the extent Plaintiff attempts to plead a Nevada RICO claim based on the predicate offense of facilitating sex trafficking.

## V. NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: December 9, 2020

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE