1
2
3
4               UNITED STATES DISTRICT COURT
5                    DISTRICT OF NEVADA
6                          * * *
7    BRENNA SCHRADER,                    Case No. 2:19-CV-2159 JCM (BNW)
8                      Plaintiff(s),              ORDER
9         v.
10   STEPHEN ALAN WYNN, et al.,
11                     Defendant(s).
12
13          Presently before the court is Magistrate Judge Brenda Weksler's report and
14   recommendation ("R&R") and order.  (ECF No. 81).  Defendants Maurice Wooden, Stephen
15   Wynn, Wynn Las Vegas, LLC ("WLV"), and Wynn Resorts, Ltd. ("WRL") object to the
16   R&R and order.  (ECF Nos. 82, 83, 84, 85).  Plaintiff Brenna Schrader filed a response.
17   (ECF No. 88).

18   **I.       BACKGROUND**

19          This is a putative class action arising from plaintiff Brenna Schrader's employment as
20   a massage therapist with WLV.  (Proposed First Am. Compl., ECF No. 69-1).  Schrader
21   alleges that she was forced to engage in sexual conduct with Stephen Wynn, the former CEO
22   and Chairman of WRL, and VIP clients.  (*Id.* ¶¶ 47–49).  She also alleges that Maurice
23   Wooden, the former president of WLV, Wynn, and others concealed this misconduct,
24   facilitated it for profit, and coerced victims into silence.  (*Id.* ¶¶ 72, 126, 144).  She seeks to
25   represent several subclasses of current and former female employees of WLV and WRL that
26   were subject to discrimination, harassment, and forced sexual servitude.  (*Id.* ¶ 8).
27   Defendants removed this case to federal court in December 2019.  (ECF No. 1).  They filed
28

James C. Mahan
U.S. District Judge

1   extensive motions to dismiss and a motion for a more definite statement in March 2020.

2   (ECF Nos. 33, 35, 36, 39).  These motions remain pending.

3          In July 2020, Schrader moved for leave to file a first amended complaint, the

4   gravamen of the instant objections.  (ECF No. 69).  Judge Weksler first denied WLV and

5   WRL's motion to strike Schrader's motion to amend (ECF No. 73), ruling that it was not an

6   improper surreply to the motions to dismiss.  (ECF No. 81 at 2–3).   Judge Weksler then

7   partially granted the motion, ruling that, for the most part, defendants did not satisfy their

8   burden to show that amendment was prejudicial or futile.  (ECF No. 81).

9          Defendants now object to almost every aspect of Judge Weksler's R&R and order.

10  (ECF Nos. 82, 83, 84, 85).

11  **II.    LEGAL STANDARD**

12         **A. Standard of Review of the R&R and Order**

13         A party can appeal a magistrate judge's order and object to her R&R.  28 U.S.C. §

14  636(b)(1); Fed. R. Civ. P. 72(a).  The district judge may "affirm, reverse, or modify, in whole

15  or in part, the magistrate judge's order," LR IB 3-1(b), and "accept, reject or modify, in

16  whole or in part, the magistrate judge's findings or recommendations."  LR IB 3-2(b).

17         A magistrate judge's jurisdiction to enter an order rather than to issue findings and

18  recommendations depends on whether the matter is dispositive or non-dispositive of a claim

19  or defense.  *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72.  The court looks to the

20  "effect of the motion" to determine whether it is dispositive.  *United States v. Rivera–*

21  *Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004) (internal citations omitted).

22
23         There is a split of authority on whether a motion to amend a pleading is dispositive,

    especially if it is denied on futility grounds.  *Grand Canyon Skywalk Dev., LLC v. Cieslak*,
24
    No. 2:13-cv-596-JAD-GWF, 2015 WL 1805055, at *2 (D. Nev. Apr. 20, 2015) (discussing
25
    the split of authority and requesting that a *full denial* of a motion to amend be treated as an
26
    R&R subject to de novo review); *United States v. Sayers Constr., LLC*, No. 2:19-cv-1602-
27
    JCM-EJY, 2020 WL 3643431, at *2 (D. Nev. July 6, 2020) ("However, sometimes a motion
28

**James C. Mahan**
**U.S. District Judge**

1    for leave to amend the pleadings is dispositive, *especially when denied*; courts are split on the

2    matter." (emphasis added)).

3         But generally, a *grant* of a motion to amend is treated as non-dispositive.  *See Sayers*

4    *Constr.*, 2020 WL 3643431, at *2.  A magistrate judge's order on a non-dispositive motion

5    may be reversed only if it is clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A);

6    LR IB 3-1; *see also Grand Canyon*, 2015 WL 1805055, at *2.  Moreover, magistrate judges

7    often fashion a *denial* of a motion to amend as an R&R.  *See Bastidas v. Chappell*, 791 F.3d

8    1155, 1163–64 (9th Cir. 2015); *Festa v. Sandoval*, No. 2:17-cv-00850-APG-NJK, 2020 WL

9    8087918, at *5 (D. Nev. Nov. 30, 2020), *report and recommendation adopted sub nom.*

10   *Festa v. NDOC*, No. 2:17-cv-00850-APG-NJK, 2021 WL 65467 (D. Nev. Jan. 7, 2021).  If

11   objections are filed, the court reviews de novo the portions of the R&R to which objection is

12   made.  *Grand Canyon*, 2015 WL 1805055, at *2.

13        That is what happened here.  The magistrate judge *granted* Schrader's motion to

14   amend except to the extent that she *recommended* it be denied in two respects.  (ECF No.

15   81).  Defendants do not object to the two recommendations because, after all, they oppose

16   amendment.  (*See, e.g.*, ECF No. 82 at 1).  They object to the magistrate judge's rulings that

17   Schrader's amended claims are not futile or prejudicial.  Because defendants object to non-

18   dispositive rulings, the court will review the R&R and order using a clearly erroneous or

19   contrary to law standard of review.  *Cf. Sayers Constr.*, 2020 WL 3643431, at *2 (reviewing

20   de novo a defendant's objections to the *denial* of its motion to amend its counterclaims based

21   on futility); *see also* (ECF No. 83 at 4 n.1 (discussing the appropriate standard of review)).

22         The magistrate judge's factual findings are clearly erroneous if the district judge "on

23   the entire evidence is left with the definite and firm conviction that a mistake has been

24   committed."  *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).  The magistrate

25   judge's legal conclusions are contrary to law when she "fails to apply or misapplies relevant

26   statutes, case law, or rules of procedure."  *United States v. Desage*, 229 F. Supp. 3d 1209,

27   1213 (D. Nev. 2017) (internal quotation marks omitted).  This standard of review is

28   significantly deferential.  *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension*

**James C. Mahan**
**U.S. District Judge**

1    *Tr. for S. Cal.*, 508 U.S. 602, 623 (1993).  The reviewing court may not simply substitute its

2    judgment for that of the deciding court.  *Grimes v. City & Cty. of San Francisco*, 951 F.2d

3    236, 241 (9th Cir. 1991).

4          **B. Motion for Leave to Amend**

5          Federal Rule of Civil Procedure 15 requires courts to "freely give leave [to amend]

6    when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This policy is "to be applied with

7    extreme liberality."  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.

8    2001) (citation omitted).  Courts consider various factors when granting leave to amend

9    which include: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility

10   of amendment, and (5) whether the party has previously amended its pleading.  *Johnson v.*

11   *Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

12         A proposed amendment is futile only if no set of facts can be proved under the

13   amendment that would constitute a valid claim or defense.  *Miller v. Rykoff–Sexton, Inc.*, 845

14   F.2d 209, 214 (9th Cir. 1988).  The test for futility is somewhat like the test for a motion to

15   dismiss under Rule 12(b)(6).[1]  *Id.*; *see also Rowe v. Clark Cty. Sch. Dist.*, No. 2:16-cv-661-

16   JCM-PAL, 2017 WL 2945718, at *3 (D. Nev. July 10, 2017); *Morris v. CACH, LLC*, No.

17   2:13-cv-00270-APG, 2013 WL 5738047, at *2 (D. Nev. Oct. 22, 2013).  The party opposing

18   amendment has the burden to prove futility.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183,

19   187 (9th Cir. 1987).

20   **III.    DISCUSSION**

21         **A.  Magistrate Judge's Denial of WLV and WRL's Motion to Strike**

22         WLV and WRL argue that Schrader's motion to amend is effectively an improper

23   surreply to the motions to dismiss and should be stricken under LR 7-2(g).  (ECF No. 84 at

24   5–10).  Schrader admits in her motion to amend that "[d]efendants' numerous motions to

26       [1] *See generally* Amendments with Leave of Court—When Leave to Amend May Be
Denied, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.) ("Although several courts have stated that

27   the substantive merits of a claim or defense should not be considered on a motion to
amend, these statements should not be construed too broadly . . . [S]everal courts have held

28   that if a complaint as amended could not withstand a motion to dismiss or summary
judgment, then the amendment should be denied as futile.").

James C. Mahan
U.S. District Judge

1    dismiss allege that Plaintiff's complaint failed to state a claim.  Plaintiff's first amended

2    complaint addresses any perceived deficiencies, adds causes of action, makes clarifications

3    and provides a more definite statement." (ECF No. 69 at 3).

4         WLV and WRL argue that Schrader's opposition papers cannot "bootstrap new or

5    additional allegations" so her motion to amend cannot do so either.  (ECF No. 84 at 10).

6    They also point out that all the exhibits attached to the 296-page proposed first amended

7    complaint were either discussed in or attached to Schrader's opposition papers.  (*Id.* at 6–7).

8         Even though Schrader did not amend her complaint within twenty-one days after

9    defendants' motions to dismiss, Rule 15 expressly allows such amendments as a matter of

10   course. Fed. R. Civ. P. 15(a)(1)(B).  As the magistrate judge noted, a motion for leave to file

11   an amended complaint is a separate motion that can follow motions to dismiss and generally

12   should be freely granted.  (ECF No. 81 at 2–3).  And in amending Rule 15 in 2009, the

13   Advisory Committee on the Civil Rules noted that "[a] responsive amendment may avoid the

14   need to decide [a Rule 12 motion] or reduce the number of issues to be decided, and will

15   expedite determination of issues that otherwise might be raised seriatim."  Fed. R. Civ. P. 15,

16   Advisory Committee's Note (2009 Amendments).  In addition, none of cases offered by

17   WLV and WRL in their objection construed a motion for leave to amend as a surreply.  (ECF

18   No. 84 at 5).

19        Put plainly, parties are not prohibited from responding to a motion to dismiss with an

20   amended complaint.  Instead, the court considers the aforementioned factors in deciding

21   whether to allow amendment.  *See supra* section II.B.  Thus, the magistrate judge's

22   application of Rule 15(a) and LR 15-1 was not clearly erroneous or contrary to law.  The

23   denial of WLV and WRL's motion to strike is AFFIRMED.

24   **B. Magistrate Judge's Disregard of Defendants' Pending Motions to Dismiss**

25   **under Local Rule 7-2**

26        WLV, WRL, and Wynn object to the magistrate judge's disregard of their fully

27   briefed and pending motions to dismiss which they "incorporated, referenced, and expanded

28   on" in their opposition to amendment.  (ECF No. 85 at 11; *see also* ECF No. 83 at 4–7).  For

James C. Mahan
U.S. District Judge

1    example, in considering Wynn's argument that Schrader's RICO, IIED, and conspiracy

2    claims against him are time-barred, the magistrate judge ruled that "Local Rule 7-2(a)

3    requires that all points and authorities must be combined into a single document. Mr. Wynn

4    has not followed this rule by citing to his motion to dismiss in lieu of fleshing out his statute

5    of limitations arguments in this brief. . . . On this basis alone, the Court dismisses his

6    argument." (ECF No. 81 at 15; *see also id.* at 6).  Similarly, the magistrate judge ruled

7    several times that Wynn "cites to his motion to dismiss but does not flesh out his argument in

8    his response brief" and "[a]ccordingly, under Local Rules 7-2(a) and 7-2(d), the Court

9    dismisses these arguments. Mr. Wynn failed to carry his burden to show that amendment

10   should be denied." (*Id.* at 16; *see also id.* at 17).

11       LR 7-2(a) states that all motions "must be supported by a memorandum of points and

12   authorities.  The motion and supporting memorandum of points and authorities must be

13   combined into a single document."  LR 7-2(d) states that the "[t]he failure of an opposing

14   party to file points and authorities in response to any motion, except a motion under Fed. R.

15   Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the

16   motion."

17       By their plain terms, these local rules do not prohibit citing and incorporating past

18   briefing.  The purpose of LR 7-2(a) is to prohibit a motion from being filed separately from a

19   memorandum of points and authorities.  (ECF No. 83 at 5).  And defendants' opposition to

20   amendment cannot be construed as consent to grant the motion to amend under LR 7-2(d).

21       What's more is that Schrader never argues in either her reply in support of

22   amendment (ECF No. 80) or in her response to the instant objections (ECF No. 85) that

23   defendants did not comply with LR 7-2.  In fact, in responding to the instant objections, she

24   merely adopts and incorporates portions of her reply in support of amendment and opposition

25   to dismissal, dubiously citing Rule 10(c).[2]  (ECF No. 88).

26

27   ─────────────────
     [2] *See generally Doyle v. Hogan*, 2019 WL 3500924 (D. Md. 2019) (permitting the defendant
     to incorporate by reference arguments contained in prior opposition to plaintiff's motion);
28   Adoption by Reference Permitted, 5A Fed. Prac. & Proc. Civ. § 1326 (4th ed.) ("A few
     federal courts have allowed defendants to incorporate by reference prior motions made in the

1    Thus, the magistrate judge clearly erred in her application of LR 7-2.  But the remedy

2    for this clear error is less clear.  WLV and WRL ask the court to sustain all the instant

3    objections and render a brand-new decision on the motion to amend along with deciding the

4    pending motions to dismiss.  (ECF No. 85 at 16).

5    The court will not go that far.  Instead, the court will closely hew to defendants'

6    opposition to amendment and consider whether the magistrate judge clearly erred in her

7    futility determinations.   In doing so, the court will consider any *specifically* cited and

8    incorporated points and authorities from past briefing that the magistrate judge disregarded.

9    *Cf. Eagle Air Med Corp. v. Sentinel Air Med. All.*, No. 2:18-cv-680-JCM-PAL, 2019 WL

10   2028511, at *2 (D. Nev. May 7, 2019) (holding that magistrate judge's ruling that a motion

11   was not properly supported by points and authorities was clearly erroneous).  This remedy

12   strikes the proper balance between valuing the judicial resources expended in adjudicating

13   the motion to amend, the highly deferential standard of review, plaintiff's right to amend and

14   have proper notice of defendants' grounds for opposition, and the parties extensive motion

15   practice to date.

16   **C. Futility of Schrader's Amended Claims**

17   **1.  Title VII Claim**

18   WLV and WRL oppose amendment of Schrader's Title VII claim by arguing that she

19   fails to attach her EEOC right to sue letter and fails to plead sufficient facts to state a claim.

20   (ECF No. 72 at 8–9).  The court will not disturb the magistrate judge's ruling that Schrader

21   plausibly alleges that her suit is timely.  (ECF No. 81 at 4).

22   While Schrader labels her claim "Discrimination in violation of Title VII," she recites

23   various elements of sex discrimination, hostile work environment, and retaliation claims.

24   (ECF No. 69-1 ¶¶ 139–152).   But the factual allegations in the proposed first amended

25   complaint are best read as an attempt to allege a hostile work environment claim.   And

26   Schrader casts her Title VII claim as a hostile work environment claim in both her opposition

27

28   action, even though Rule 10(c) does not contemplate the incorporation of statements from
prior motions (only statements "in a pleading" may be adopted by reference elsewhere)").

**James C. Mahan**
**U.S. District Judge**

1   to dismissal and reply in support of amendment.  (ECF No. 54 at 25; ECF No. 80 at 4–5;
2   ECF No. 88 at 2).

3        To state a hostile work environment claim, a plaintiff must plausibly allege: (1) she
4   was "subjected to verbal or physical" conduct because of her sex; (2) "the conduct was
5   unwelcome;" and (3) "the conduct was sufficiently severe or pervasive to alter the conditions
6   of the [plaintiff's] employment and create an abusive working environment." *Manatt v.*
7   *Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003) (citation omitted).

8        Whether a work environment is hostile "can be determined only by looking at all the
9   circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "These may include
10  the frequency of the discriminatory conduct; its severity; whether it is physically threatening
11  or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an
12  employee's work performance." *Id.* "An employer is liable for a hostile environment
13  created by a plaintiff's co-worker if it knew or should have known about the misconduct and
14  failed to take 'prompt and effective remedial action.' " *Westendorf v. W. Coast Contractors*
15  *of Nev., Inc.*, 712 F.3d 417, 421 (9th Cir. 2013) (quoting *E.E.O.C. v. Prospect Airport Servs.,*
16  *Inc.*, 621 F.3d 991, 1001 (9th Cir. 2010)).

17       The magistrate judge correctly ruled that defendants did not analyze all the factual
18  allegations incorporated by reference into the Title VII claim.  (ECF No. 81 at 5).  Schrader
19  pleads that the nearly two decades of company-sanctioned sexual abuse and harassment
20  constitute one unlawful employment practice under Title VII's continuing violations
21  doctrine.  (ECF No. 69-1 ¶¶ 78–81); *see generally Scott v. Gino Morena Enterprises, LLC*,
22  888 F.3d 1101, 1112 (9th Cir. 2018).  Schrader also pleads that WRL's CEO, Matthew
23  Maddox, admitted in a 2018 investigation by the Massachusetts Gaming Commission that
24  defendants' behavior created an intolerable atmosphere for all female employees and
25  especially for the female employees that Wynn sexually abused.  (*Id.* ¶¶ 12, 74–81, 84).

26       The discrete acts Schrader alleges is that in April 2019, an employee called her a
27  prostitute and spa director Erika Valles forced her to constantly work and locker alongside
28  this employee throughout 2019 and 2020.  (*Id.* ¶¶ 59–63).  This employee also began a purge

**James C. Mahan**
**U.S. District Judge**

- 8 -

1    campaign calling for all victims to be terminated.  (*Id.* ¶ 62).  "During 2019, any time

2    Plaintiff spoke to management, Ms. Valles was conspicuously posted nearby. Plaintiff

3    believed Ms. Valles was there to send a message that she needed to maintain loyalty to the

4    company or face serious harm." (*Id.* ¶ 66).  "As late as February 2020, Plaintiff has been

5    forced to work alongside employees that referred to her and other victims as prostitutes and

6    sluts." (*Id.* ¶ 76).  As a result of this allegedly severe, pervasive, and unwelcome conduct,

7    Schrader has been "impaired and unable to function in many respects.  After years of sexual

8    abuse and forced

9    sexual servitude, [she] was scared to open mail or speak to anyone about anything without

10   getting permission from those who abused her." (*Id.* ¶ 67).

11        Thus, the magistrate judge's ruling that WLV and WRL did not prove futility is

12   AFFIRMED.

13                          **2.  Forced Labor Claim**

14        WLV, WRL, and Wynn oppose amendment of Schrader's forced labor claim under

15   the Trafficking Victims Protection Act, 18 U.S.C. § 1589, by arguing that she fails to state a

16   claim.  (ECF No. 72 at 9–10; ECF No. 75 at 7–9).  The magistrate judge found that

17   "[p]laintiff is not alleging that she was forced to work at WLV (or WR), but rather that she

18   was forced into sexual servitude while employed there" and that Wynn's futility argument

19   "about [p]laintiff being forced to work at WLV attacks a straw man; it does not analyze

20   whether [p]laintiff states a claim under 18 U.S.C. § 1589 based on her actual theory of

21   liability." (ECF No. 81 at 14).

22        "[S]omeone is guilty of forced labor if he intends to cause a person in his employ to

23   believe that if *she does not continue to work*, she will suffer the type of serious harm—

24   physical or nonphysical, including psychological, financial, reputation harm—that would

25   compel someone in her circumstances to *continue working to avoid that harm*." *United*

26   *States v. Dann*, 652 F.3d 1160, 1169–70 (9th Cir. 2011) (emphasis added); *see also Headley*

27   *v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012).

28

1    "[A]rduous, demeaning, or even terrible working conditions or employment

2    requirements alone will not suffice. These conditions may precipitate an employee's

3    departure from an employer—such as in *Headley* [ ]—but unless those conditions are used to

4    obtain and keep an employee's labor, they cannot support a claim of forced labor."

5    *Martinez-Rodriguez v. Giles*, 391 F. Supp. 3d 985, 998 (D. Idaho 2019).

6        The magistrate judge clearly erred because the Ninth Circuit's interpretation of the

7    forced labor statute does not allow Schrader's theory of liability.  As Wynn notes in

8    opposition to amendment, Schrader does not allege that "anyone threated her if she attempted

9    to leave her job. . . . She had many opportunities to cease working at WLV—as many other

10   WLV employees have done."  (ECF No. 75 at 7, 8).

11       Schrader's allegation that "[d]efendants' conduct, power and ability to blacklist

12   employees throughout Nevada made Plaintiff and plaintiff class members vulnerable to

13   forced servitude and sexual labor" is not enough to plausibly support an intentional threat of

14   serious harm that compelled her and other female employees to keep working when they

15   otherwise would have left.  (ECF No. 69-1 ¶ 158; *see also id.* ¶¶ 115–117 ("When Plaintiff

16   complained, the spa director, in a threatening tone, made it clear to Plaintiff that she had

17   better not complain or else.")).  Thus, the magistrate judge clearly erred in ruling that

18   Schrader stated a forced labor claim and her ruling is REVERSED.  Schrader's motion to

19   amend is DENIED without prejudice to the extent she attempts to amend her forced labor

20   claim.

21                   **3.  Federal RICO Claims**

22       WLV and WRL oppose amendment of Schrader's federal RICO claims by

23   incorporating by reference their motion to dismiss briefing and reemphasizing that she does

24   not have statutory standing or specific allegations.  (ECF No. 72 at 10–11).  As

25   aforementioned, the court will consider specifically cited and incorporated points and

26   authorities from past briefing.

27       In that past briefing, defendants assert that Schrader's federal RICO claims are

28   defective on several grounds: the claims are time-barred, Schrader lacks statutory standing,

James C. Mahan
U.S. District Judge

1    she has not alleged a distinct person separate from a RICO enterprise, and she has not

2    sufficiently alleged a pattern of racketeering activity.  (ECF No. 35 at 31–46; ECF No. 39 at

3    8–18).  The court will address only the most obvious defect at this juncture: insufficiently

4    supported allegations of a pattern of racketeering activity.[3]

5         The federal RICO statute addresses four forms of illicit activity reflected in the four

6    subsections of Section 1962: (a) acquiring or operating an enterprise using racketeering

7    proceeds; (b) controlling an enterprise using racketeering activities; (c) conducting the affairs

8    of an enterprise using racketeering activities; and (d) conspiring to so acquire, control, or

9    conduct.  18 U.S.C. § 1962; *see also* Nev. Rev. Stat. § 207.400.  The statute provides a

10   private right of action for treble damages and attorney's fees.  18 U.S.C. § 1964(c); *see also*

11   Nev. Rev. Stat. § 207.470(1).

12        "To state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3)

13   through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or

14   property.'"  *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (quoting 18 U.S.C. §

15   1964(c)); *see also Allum v. Valley Bank of Nevada, 849 P.2d 297, 299 (1993)* (enumerating

16   elements of a RICO claim under Nevada law).

17        A pattern of racketeering activity is at least two enumerated predicate acts within a

18   ten-year period.  18 U.S.C. § 1961(1), (5); *see also* Nev. Rev. Stat. §§ 207.360, .390

19   (enumerating a five-year period).  The predicate acts must be related and not simply isolated

20   events and must either amount to or pose a threat of continued criminal activity.  *H. J. Inc. v.*

21   *Nw. Bell Tel. Co.*, 492 U.S. 229, 240–41 (1989).

22        "The plaintiff must adequately plead the elements of each predicate act, satisfying the

23   pleading standard that would apply if the predicate act were a stand-alone claim."  *Nutrition*

24   _____

25        [3] In arriving at this conclusion, the court dutifully considered Schrader's entire 296-
26   page proposed first amendment complaint and recognizes that Schrader alleges serious
     misconduct over many years.  But that does not mean the court must laboriously search the
27   complaint for basic recitations of factual assertions that could support the elements of each
     alleged predicate act.  *See Northwestern Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662 (7th Cir.
28   1994) ("District judges are not archaeologists.  They need not excavate masses of papers in
     search of revealing tidbits.").

James C. Mahan
U.S. District Judge

- 11 -

1    *Distrib. LLC v. Custom Nutraceuticals LLC*, 194 F. Supp. 3d 952, 957 (D. Ariz. 2016); *see*

2    *also Brown v. Bettinger*, No. 2:15-cv-00331-APG, 2015 WL 4162505, at *5 (D. Nev. July 8,

3    2015).  And she must allege what conduct is attributable to each defendant.  *See Ehmann v.*

4    *Desert Palace, LLC*, No. 2:19-cv-01199-APG-BNW, 2020 WL 5820995, at *2 (D. Nev.

5    Sept. 29, 2020); *Does 1-60 v. Republic Health Corp.*, 669 F. Supp. 1511, 1517 (D. Nev.

6    1987).

7        Schrader alleges that defendants committed the predicate acts of forced labor (18

8    U.S.C. § 1589), sex trafficking (18 U.S.C. § 1591(a)(1)), witness tampering (18 U.S.C. §

9    1512), and wire fraud (18 U.S.C. § 1343).  (ECF No. 69-1 ¶¶ 114–123).  The court will

10   address the deficiency of each alleged predicate act in turn.

11                                   **a.  Forced Labor**

12       As aforementioned, Schrader fails to state a forced labor claim under 18 U.S.C. §

13   1589. *See supra* section III.C.2.  Thus, Schrader's motion to amend is DENIED without

14   prejudice to the extent she attempts to plead federal RICO claims based on the predicate act

15   of forced labor.

16                                   **b.  Sex Trafficking**

17       The predicate act of sex trafficking under 18 U.S.C. § 1591(a)(l) has three elements:

18   (1) the defendant knowingly recruited, enticed, harbored, transported, provided, obtained,

19   advertised, maintained, patronized, or solicited a person to engage in a commercial sex act;

20   (2) the defendant knew or was in reckless disregard of the fact that such means would be

21   used to cause the person to engage in a commercial sex act; and (3) the defendant's acts were

22   in or affecting interstate commerce.  18 U.S.C. § 1591(a)(1); *see also* Ninth Circuit Model

23   Criminal Jury Instructions 8.134A (2010 Edition last updated December 2020).  A

24   commercial sex act is "any sex act, on account of which anything of value is given to or

25   received by any person."  18 U.S.C. § 1591(e)(3).

26       Schrader alleges that in 2016, a VIP guest requested Schrader's services as a massage

27   therapist based on a recommendation from Wynn.  (ECF No. 69-1 ¶¶ 49, 118).  The VIP

28   guest routinely requested Schrader as his massage therapist and she endured sexual assaults

**James C. Mahan**
**U.S. District Judge**

1   until early 2018.  (*Id.*).  These allegations lack plausible allegations that anything of value

2   was exchanged, Wynn's state of mind in trafficking her to the VIP client, and that Wynn's

3   alleged misconduct affected interstate commerce.  Schrader's opposition to dismissal merely

4   repeats these incomplete allegations.  (ECF No. 54 at 45).  Thus, Schrader's motion to amend

5   is DENIED without prejudice to the extent she attempts to plead federal RICO claims based

6   on the predicate act of sex trafficking.

7   ### c.  Witness Tampering

8        Schrader does not sufficiently allege the predicate act of witness tampering either.

9   She must allege that defendants (1) knowingly used intimidation, threats, corrupt persuasion,

10  or misleading conduct with the intent to (2) influence, delay, or prevent testimony in an

11  official [federal] proceeding, or cause the person to withhold, destroy or conceal evidence

12  from use in an official [federal] proceeding.  *See* 18 U.S.C. § 1512(b); *Vierria v. California*

13  *Highway Patrol*, 644 F. Supp. 2d 1219, 1235 (E.D. Cal. 2009). A proceeding

    "before a Federal Government agency," 18 U.S.C. § 1515(a)(1), is an official federal

14

15  proceeding and it need not be pending or imminent at the time of the tampering.  *Id.* §

16  1512(e)(1).  There must be a nexus between defendants' acts and a particular official

17  proceeding.  *See Arthur Andersen L.L.P. v. United States*, 544 U.S. 696, 707–08 (2005).

18       Schrader alleges that Wynn and Maddox held town-hall style meetings in 2018 where

19  they addressed employees and potential witnesses and knew of "potential complaints for

20  harassment and sexual abuse that could be filed with the [EEOC] after the explosive WSJ

21  article.  As expected, in 2018, numerous lawsuits and EEOC complaints were lodged against

22  Defendants for their conduct related to Mr. Wynn's sexual misconduct."  (ECF No. 69-1 ¶¶

23  24, 119–120).  These allegations lack a plausible allegation of a nexus between the alleged

24  witness tampering and a specific official proceeding.  Thus, Schrader's motion to amend is

25  DENIED without prejudice to the extent she attempts to plead federal RICO claims based on

26  the predicate act of witness tampering.

27  ### d.  Wire Fraud

28

**James C. Mahan**
**U.S. District Judge**

1    Schrader does not plead the predicate act of wire fraud with the particularity required

2    by Rule 9(b).  *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004).

3    The elements of wire fraud are: (1) formation of a scheme or artifice to defraud, (2) use of

4    the United States mails or wires, or causing such a use, in furtherance of the scheme, and (3)

5    specific intent to deceive or defraud.  *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir.

6    2013).  She must specify the time, place, and content of the alleged underlying fraudulent

7    acts, as well as the parties involved and their individual participation.  *See Wegner v. Wells*

8    *Fargo Bank Nat'l Ass'n*, No. 2:17-cv-1429-JCM-PAL, 2018 WL 3114528, at *8 (D. Nev.

9    June 25, 2018), *aff'd sub nom.* 791 F. App'x 669 (9th Cir. 2020); *Brown*, 2015 WL 4162505,

10   at *5.

11          Yet her wire fraud allegations are a single paragraph which describes defendants'

12   wire fraud scheme as "luring Plaintiff and other female employees to work off the clock,

13   never reporting these hours, which resulted in a loss of pay via a wire transaction to

14   Plaintiff's and female employees' banks via direct deposit. This occurred each and every

15   payday that corresponded to pay period when Plaintiff was forced to perform sexual

16   services."  (ECF No. 69-1 ¶ 121).  Schrader's opposition to dismissal merely repeats these

17   non-specific allegations.  (ECF No. 54 at 46).  Thus, Schrader's motion to amend is DENIED

18   without prejudice to the extent she attempts to plead federal RICO claims based on the

19   predicate act of wire fraud.

20          In sum, Schrader fails to plead two predicate acts constituting a pattern of

21   racketeering activity and the magistrate judge's ruling is REVERSED.  Schrader's motion to

22   amend is DENIED without prejudice to the to the extent she attempts to amend her federal

23   RICO claims.

24                              **4.  Nevada RICO Claim**

25          Schrader's Nevada RICO claim is the only new claim in her proposed first amended

26   complaint.  WLV and WRL oppose this claim by merely stating that because Schrader's

27   federal RICO claims fail, her Nevada RICO claim must also fail.  (ECF No. 72 at 10–11).

28   Wynn offers a more substantive opposition.  He argues that, among other defects, Schrader

**James C. Mahan**
**U.S. District Judge**

1   has not sufficiently alleged any predicate acts and, even if she did, she cannot recover

2   because she participated in the predicate acts.  (ECF No. 75 at 15–16).

3       The Nevada Supreme Court in *Allum* acknowledged the similarities between the

4   federal and Nevada RICO statutes and claims under both usually rise or fall together.  *See,*

5   *e.g.*, *Hunt v. Zuffa, LLC*, 361 F. Supp. 3d 992, 1000 n.55 (D. Nev. 2019) (holding that

6   plaintiff failed to establish RICO standing under both federal and state law); *Kriston v.*

7   *Peroulis*, No. 2:09-cv-00708-RCJ-LRL, 2010 WL 11639688, at *6 (D. Nev. Feb. 12, 2010);

8   *see also supra* section III.C.3.

9       Schrader alleges that defendants committed the predicate acts of pandering and sex

10  trafficking (NRS § 201.300), facilitating sex trafficking (NRS § 201.301), and sexual assault

11  (NRS §§ 201.320, 200.463, 200.464, 200.467, and 200.468).  (ECF No. 69-1 ¶ 201).

12      The court cannot find that allowing the Nevada RICO claim to proceed was clearly

13  erroneous or contrary to law.  Defendants have the burden to show that amendment is futile.

14  Unlike Schrader's federal RICO claims, her Nevada RICO claim was not in the original

15  complaint so there was no prior briefing that the magistrate judge disregarded.

16      The magistrate judge correctly concluded that Wynn "fails to cite any authority for

17  many of his arguments, including what a Plaintiff must plead in relation to [the] predicate

18  acts." (ECF No. 81 at 16–17).  She refused to rule that "an alleged victim of forced sexual

19  labor is a participant in the alleged RICO violation in the absence of an explanation and

20  authority supporting this conclusion."  (*Id.*).

21      However, as aforementioned, a magistrate judge can grant leave to amend but will

22  generally fashion a denial of leave to amend as an R&R.  *See supra* section II.A.  The

23  magistrate judge recommends that Schrader's motion to amend be denied without prejudice

24  to the extent she attempts to plead a Nevada RICO claim based on the predicate offense of

25  facilitating sex trafficking because she does not allege the requisite transportation or travel

26  required by NRS § 201.301.  (ECF No. 81 at 17).

27      Because there are no objections to this recommendation, the court need not conduct a

28  de novo review.  28 U.S.C. § 636(b)(1) (requiring district courts to "make a de novo

**James C. Mahan**
**U.S. District Judge**

1   determination of those portions of the report or specified proposed findings to which

2   objection is made"); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en

3   banc).  Thus, the magistrate judge's recommendation is ADOPTED.  Schrader's motion to

4   amend is DENIED without prejudice to the extent she attempts to plead the predicate act of

5   facilitating sex trafficking.  But otherwise, the magistrate judge's ruling that defendants did

6   not prove the futility of this claim is AFFIRMED.

7              **5.  IIED Claims**

8         "To state a claim for intentional infliction of emotional distress [under Nevada law], a

9   plaintiff must allege (1) that the defendant's conduct was extreme and outrageous; (2) that

10  the defendant either intended or recklessly disregarded the causing of emotional distress; (3)

11  that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the

12  defendant's conduct actually or proximately caused the distress. [E]xtreme and outrageous

13  conduct is that which is outside all possible bounds of decency and is regarded as utterly

14  intolerable in a civilized community."  *Friedman v. United States*, No. 2:18-cv-857-JCM-

15  VCF, 2019 WL 121965, at *5 (D. Nev. Jan. 7, 2019) (internal citations and quotation marks

16  omitted) (citing *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000)).

17        Liability does not extend to "mere insults, indignities, threats annoyances, petty

18  oppressions, or other trivialities."  *Candelore v. Clark Cnty. Sanitation Dist.*, 752 F. Supp.

19  956, 962 (D. Nev. 1990) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

20  However, "unwelcome sexual advances, sexual remarks, crude innuendos, inappropriate

21  physical touching, and retaliation may reasonably be regarded as extreme and outrageous

22  conduct." *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1268 (D. Nev. 2001) (internal citation and

23  quotation marks omitted).  The court will address Schrader's IIED claim against each

24  defendant in turn.

25              **a.    WLV and WRL**

26        WLV and WRL oppose Schrader's amendment of her IIED claim on three grounds.

27  (ECF No. 81 at 7–9).  First, WRL and WLV argue that the claim is preempted by the Nevada

28  Industrial Insurance Act ("NIIA").  (ECF No. 72 at 12).  Second, they argue that the factual

**James C. Mahan**
**U.S. District Judge**

allegations supporting the IIED claim are "virtually the same as the employment practices she asserts violate Title VII," and thus, the IIED claim is preempted by NRS § 613.310 which prohibits sex discrimination.  (*Id.* at 12).  Third, the statute of limitations for IIED claims is two years so the claim cannot rest on any misconduct before September 26, 2017. (*Id.* at 13).

The court cannot find that the magistrate judge clearly erred in rejecting these arguments.  Under the NIIA, the exclusive remedy for an employee "injure[d] by accident sustained arising out of and in the course of the employment" is payment of medical expenses by the employer's worker's compensation insurance.  Nev. Rev. Stat. § 616A.020. The statute does not immunize employers from "any and all on-the-job injuries suffered by its employees."  *Wood v. Safeway, Inc.*, 121 P.3d 1026, 1032 (Nev. 2005).  It covers injuries that "both arise out of the employment and occur within the course of that employment."  *Id.* WLV and WRL did not offer or incorporate any "analysis of whether [p]laintiff's claims arose out of and occurred within the course of her employment."  (ECF No. 81 at 8 (referring to ECF No. 72 at 12)).

And while NRS § 613.310 preempts tort claims against employers arising out of discriminatory conduct, Schrader does not allege mere discrimination.  She alleges that Wynn conspired with VIP clients to sexually abuse her and other female employees and that the other defendants knew about this conduct, actively covered it up, encouraged it, and facilitated it for profit.  (ECF No. 69-1 ¶¶ 210–214).  *Accord Burns*, 175 F. Supp. 2d at 1267 ("Nevada's anti-discrimination law also does not preempt common law tort claims" and "plaintiff's emotional distress claims are not preempted").  And Schrader alleges some of this misconduct occurred in the two years before she filed suit.  (ECF No. 69-1 ¶¶ 50–68).  Thus, the magistrate's ruling that WRV and WRL did not prove futility is AFFIRMED.

### b.  Wynn

Wynn opposes Schrader's amendment of her IIED claim against him by arguing that the claim is time-barred and not sufficiently alleged.  (ECF No. 75 at 9–15).  He specifically cites and incorporates points and authorities from past briefing on the statute of limitations

1    argument which the court will consider.  (*Id.* at 9).  He argues that the last alleged specific

2    wrongdoing by him towards Schrader—and not towards other female employees in the

3    putative class—occurred in June 2015.  This required Schrader to file her IIED claim by June

4    2017.  (ECF No. 83 at 7; *see also* ECF No. 39 at 8–9).  Schrader filed suit on September 26,

5    2019.

6        The magistrate judge ruled that Wynn "does not sufficiently explain why [Schrader's]

7    *new* allegations do not save her claims" from being time-barred.  (ECF No. 81 at 15

8    (emphasis added)).  For this reason, she did not reach Wynn's arguments that the continuing

9    violations doctrine, equitable estoppel, and equitable tolling do not apply.  (*Id.* at 16).

10   Schrader pleads that "Mr. Wynn sexually abused *Plaintiff* and other female employees from

11   approximately 2000 to 2018."  (ECF No. 69-1 ¶ 211 (emphasis added)).  She also pleads that

12   "from 2012 through 2018," she "not only performed sexual acts upon Mr. Wynn on various

13   occasions, but she was required to be on call to perform sexual acts for Mr. Wynn, if he so

14   desired."  (*Id.* ¶ 48).  And "in or around 2016, a VIP guest requested Plaintiff's services.  The

15   VIP guest informed Plaintiff that Mr. Wynn had recommended her as a massage

16   therapist. . . . The VIP guest routinely requested Plaintiff as his massage therapist, and

17   Plaintiff endured sexual assaults until early 2018."  (*Id.* ¶ 49).

18       While these allegations are not as specific as Schrader's allegations from December

19   2012 and June 2015, it was not clear error to consider them in ruling that Schrader's IIED

20   claim against Wynn is not time-barred.  (ECF No. 81 at 16).  The magistrate judge's ruling

21   that Wynn did not prove futility is AFFIRMED.

22                                    **c. Wooden**

23       Wooden opposes amendment of Schrader's IIED claim against him because such a

24   claim "cannot exist if there is no intentional conduct directed at the plaintiff."  (ECF No. 74

25   at 7–8 (citing *Dove v. PNS Stores, Inc.*, 982 F. Supp. 1420, 1425 (C.D. Cal. 1997)).  Wooden

26   objects to the magistrate judge ruling otherwise based on his reliance on California law.

27   (ECF No. 81 at 11).  Wooden argues that "the elements and law of an IIED claim under

28

**James C. Mahan**
**U.S. District Judge**

- 18 -

1    Nevada law are not only identical to California law, but were adopted from California law."

2    (ECF No. 82 at 5 (discussing *Olivero*, 995 P.2d at 1025).

3        Notwithstanding the source of law, an IIED claim ordinarily requires extreme and

4    outrageous conduct that is intentionally directed at the plaintiff.  *See Dove*, 982 F. Supp. at

5    1425 ("The defendant's outrageous conduct must also be directed at the plaintiff or occur in

6    the presence of the plaintiff of whom defendant is aware."); Restatement (Second) of Torts §

7    46 cmt. d (1965) (discussing bystander IIED claims).   The only alleged extreme and

8    outrageous conduct by Wooden directed at Schrader and the putative class is that "[o]n

9    January 26, 2018, after the WSJ article broke, Mr. Wooden posted a memorandum that sent a

10   message that Mr. Wynn must be supported and everyone should stay the course. As a result,

11   Plaintiff believed that she was still on call to perform sexually at the behest of Mr. Wynn."

12   (ECF No. 69-1 ¶ 52; *see also id.* ¶¶ 31, 213).

13       The magistrate judge ruled that "a reasonable person could find that a memo directing

14   people to support Mr. Wynn was extreme and outrageous."   (ECF No. 81 at 12).   But

15   Schrader does not plausibly allege that Wooden posted the memo with the required state of

16   mind to be liable for IIED.  *See Welder v. Univ. of S. Nevada*, 833 F. Supp. 2d 1240, 1245

17   (D. Nev. 2011) ("A simple pleading of personnel management activity is insufficient to

18   support a claim of intentional infliction of emotional distress, even if improper motivation is

19   alleged." (quoting *Janken v. GM Hughes Elec.*, 53 Cal. Rptr. 2d 741 (1996))).  As Wooden

20   argues in his opposition to amendment, Schrader "alleges no direct contact or interaction

21   with Wooden whatsoever."  (ECF No. 74 at 6).  Thus, the magistrate judge clearly erred and

22   her ruling is REVERSED.  Schrader's motion to amend is DENIED without prejudice to the

23   extent she attempts to amend her IIED claim against Wooden.

24                    **6.  Civil Conspiracy Claim**

25       Wynn opposes amendment of Schrader's civil conspiracy claim against him on statute

26   of limitations grounds only.  (ECF No. 75 at 9).  He specifically cited and incorporated

27   points and authorities from past briefing on this argument which the court will consider.

28   (*Id.*).

James C. Mahan
U.S. District Judge

1    "Actionable civil conspiracy arises where two or more persons undertake some
2    concerted action with the intent to accomplish an unlawful objective for the purpose of
3    harming another, and damage results. Thus, a plaintiff must provide evidence of an explicit
4    or tacit agreement between the alleged conspirators." *Guilfoyle v. Olde Monmouth Stock*
5    *Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014) (internal quotation marks and citation omitted).
6    The statute of limitations for civil conspiracy is four years and runs "from the date of the
7    injury rather than the date the conspiracy is discovered." *Siragusa v. Brown*, 971 P.2d 801,
8    806 (Nev. 1998) (discussing Nev. Rev. Stat. § 11.220).

9    Schrader filed suit on September 26, 2019.  (ECF No. 39 at 9).  She now alleges in
10   her proposed first amended complaint that "[b]eginning in or around 2016, a VIP guest
11   requested Plaintiff's services. The VIP guest informed Plaintiff that Mr. Wynn had
12   recommended her as a massage therapist. While massaging the VIP guest, he began to touch
13   Plaintiff in private areas of her body. Plaintiff had been told that she could not refuse or say
14   no to a VIP guest and therefore complied. The VIP guest routinely requested Plaintiff as his
15   massage therapist, and Plaintiff endured sexual assaults until early 2018." (ECF No. 69-1 ¶
16   49).

17   As aforementioned, the magistrate judge ruled that Wynn "does not sufficiently
18   explain why [Schrader's] new allegations do not save her claims" from being time-barred.
19   (ECF No. 81 at 15); *see also supra* section III.C.5.b.  And again, given these new allegations,
20   the court cannot find that this ruling was clearly erroneous or contrary to law.   The
21   magistrate judge's ruling that Wynn did not prove futility is AFFIRMED.

22                **7.  FLSA Claim under 29 U.S.C. § 206 and NRS § 608 et seq.**

23   The magistrate judge partially granted leave to amend and fashioned her denial of
24   leave to amend as an R&R.  She recommends that Schrader's motion to amend be denied
25   without prejudice to the extent she attempts to amend her FLSA claim because she "does not
26   plead that her weekly wages fell below the statutory minimum." (ECF No. 81 at 10).

27   Because there are no objections to this recommendation, the court need not conduct a
28   de novo review.  *See supra* section III.C.4.   The magistrate judge's recommendation is

**James C. Mahan**
**U.S. District Judge**

ADOPTED.  Schrader's motion to amend is DENIED without prejudice to the extent she attempts to amend her FLSA claim.  And because Schrader merely lists NRS § 608 et seq. in the caption of her ninth claim but cites no specific provisions or recites any elements, her amended claim under this state statute is DENIED without prejudice as well.

### D.  Prejudice to Defendants from Schrader's Amendments

Defendants oppose amendment on prejudice grounds as well.  (ECF No. 74 at 5–11; ECF No. 75 at 17–18).  They argue that the proposed first amended complaint has no new facts or exhibits that were originally unavailable.  (ECF No. 74 at 4; ECF No. 75 at 17).  Defendants also say they have incurred "gratuitous expense and delay" and will incur even more expense and delay in preparing a second round of motions to dismiss.  (ECF No. 75 at 17).

"In the absence of bad faith . . . litigation expenses incurred before a motion to amend is filed do not establish prejudice."  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see also Owens*, 244 F.3d at 712 (9th Cir. 2001).  Moreover, this case is at an early stage, discovery is stayed, this is Schrader's first request to amend, and she is not adding any new parties or legal theories, assuming that Nevada and federal RICO claims are similar enough.  *Cf. United Healthcare Ins. Co.*, 848 F.3d at 1184.  The magistrate judge's ruling that amendment is not prejudicial is AFFIRMED.

### E.  Defendants' Pending Motions to Dismiss and Motion for More Definite Statement

An amended complaint "supersedes the original, the latter being treated thereafter as non-existent."  *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (quoting *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997)); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  As a result, an amended complaint will ordinarily moot a pending motion to dismiss the original complaint.  *See Ramirez*, 806 F.3d at 1008.  Defendants' pending motions to dismiss (ECF Nos. 35, 36, 39) and motion for a more definite statement (ECF No. 33) are DENIED as moot given Schrader's first amended complaint.

James C. Mahan
U.S. District Judge

1    **IV.     CONCLUSION**

2          Accordingly,

3          IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' pending

4    motions to dismiss (ECF Nos. 35, 36, 39) and motion for a more definite statement (ECF No.

5    33) are DENIED as moot given Schrader's first amended complaint.

6          IT IS FURTHER ORDERED that Judge Weksler's order denying WLV and WRL's

7    motion to strike (ECF No. 84) is AFFIRMED.

8          IT IS FURTHER ORDERED that Judge Weksler's two recommendations (ECF No.

9    81) be, and the same hereby are, ADOPTED.

10          IT IS FURTHER ORDERED that defendants' objections to Judge Weksler's order

11   granting in part Schrader's motion to amend (ECF Nos. 82, 83, 85) are SUSTAINED in part

12   and OVERRULED in part and the order is AFFIRMED in part and REVERSED in part

13   consistent with the foregoing.

14          The clerk shall file the proposed first amendment complaint (ECF No. 69-1) and the

15   case will proceed on the following claims as alleged in the first amended complaint:

16          • Title VII claim against WLV and WRL

17          • Nevada RICO claim against WLV, WRL, Wynn, and Wooden

18          • IIED claims against WLV, WRL, and Wynn

19          • Civil conspiracy claim against Wynn

20   DATED February 17, 2021.

21                                            _____

22                                            UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

James C. Mahan
U.S. District Judge

- 22 -