UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRENNA SCHRADER, | Case No. 2:19-CV-2159 JCM (BNW) |
| Plaintiff(s), | ORDER |
| v. | |
| STEPHEN ALAN WYNN, et al., | |
| Defendant(s). | |

Presently before the court is defendants Maurice Wooden ("Wooden"), Stephen Wynn ("Wynn"), Wynn Las Vegas, LLC ("WLV"), and Wynn Resorts, LTD's ("WRL") (collectively "defendants") motions to dismiss. (ECF Nos. 98, 99, 103). Plaintiff Brenna Schrader ("Schrader") filed a response (ECF Nos. 122, 123), to which defendants replied (ECF Nos. 131, 133, 134).

**I.  BACKGROUND**

This is an employment discrimination lawsuit arising from allegations that defendants unlawfully caused Schrader and other female employees to perform sexual acts as part of their employment at WLV and WRL.  (ECF No. 122 at 2).

Schrader was an employee of WRL, WLV, and Wynn.  (ECF No. 90 ¶ 1).  She alleges that in or around December 2012, she was assigned to massage Wynn and during the encounter he ordered her to perform oral sex.  (*Id.* ¶ 47).  Fearing for her safety and financial future, Schrader complied.  (*Id.*).  Later, Schrader's supervisor allegedly warned her against saying no to Wynn or complaining about him.  (*Id.*).  This resulted in Schrader becoming a "24/7, on call, sexual servant."  (*Id.*).

James C. Mahan
U.S. District Judge

Schrader alleges that on one occasion in June 2015, while not on duty, she was ordered to go to Wynn's office immediately. (*Id.* ¶ 48). She complied and when she arrived, Wynn demanded that she perform oral sex on him as well as insert her finger into his rectum to massage his prostate. (*Id.*). She again complied. (*Id.*). Schrader maintains that she later noticed Wynn's fecal matter on her finger which sent her into a "state of shock that resulted in further psychological trauma." (*Id.*).

Schrader alleges that from 2012 to 2018 she was required to perform sexual acts and be on call to perform said acts on Wynn when he so desired. (*Id.*). Additionally, beginning in or around 2016, a VIP guest requested Schrader's services. (*Id.* ¶ 49). The VIP guest informed Schrader that Wynn had recommended her as a massage therapist. (*Id.*). During the massage, the VIP guest began touching Schrader in private areas of her body. (*Id.*). Schrader avers that she had been told she could not say no to a VIP guest and therefore complied. (*Id.*). She further asserts that she endured sexual assaults from this VIP guest until early 2018. (*Id.*).

In January 2018, the Wall Street Journal published an article about Wynn's sexual misconduct, which purportedly led defendants to engage in a campaign to blame, control, and silence Wynn's victims. (*Id.* ¶¶ 50–51). WRL and WLV also worked to undermine accusers by ignoring their complaints, conducting undercover surveillance of them, holding intimidating meetings, and publishing company-wide memorandums that allegedly turned other employees against them. (*Id.* ¶¶ 17–19).

Schrader claims she was traumatized "because of [d]efendants' actions, coverups, coercion and disguised threats." (*Id.* ¶ 67). She alleges their actions have left her impaired and unable to function in many respects. (*Id.*). Schrader alleges she was scared to open mail, interact with men, or speak to anyone without getting permission from those who abused her. (*Id.*). She further alleges that defendants' actions caused damages to her property or business because Wynn forced her to perform and remain on call for sexual services. (*Id.* ¶ 70). She did not receive credit for time spent performing these services meaning she lost vacation time. (*Id.*).

Additionally, Schrader alleges she and other female employees had to take time off for medical treatments including testing for sexually transmitted diseases. (*Id.*). She also claims

James C. Mahan
U.S. District Judge

- 2 -

defendants' actions interfered with her ability to massage private clients and therefore caused her to lose money. (*Id.* ¶ 71). Lastly, she submits that defendants "reaped the benefits of free sex labor and on call sex workers" because they "avoided the payment of wages, decreased operating costs, and increased their profits." (*Id.*).

Schrader made a variety of claims against the defendants, several of which have been previously resolved by the court. (*See* ECF No. 89 at 22). After the court granted leave to amend Schrader's original complaint, this matter proceeded as to her Title VII claims against WLV and WRL; Nevada RICO (racketeer influenced and corrupt organization) claims against all defendants; IIED (intentional infliction of emotional distress) claims against WLV, WRL, and Wynn; and her civil conspiracy claim against Wynn. (*Id.*). Defendants now move to dismiss the Nevada RICO claims against them (ECF Nos. 98; 99; 103) as well as the IIED and civil conspiracy claims against Wynn (ECF No. 99) for failure to state a claim for relief.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires every complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Although Rule 8 does not require detailed factual allegations, it does require more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, a complaint must have *plausible* factual allegations that cover "all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation omitted) (emphasis in original); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The Supreme Court in *Iqbal* clarified the two-step approach to evaluate a complaint's legal sufficiency on a Rule 12(b)(6) motion to dismiss. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678–79. Legal conclusions are not entitled to this assumption of truth. *Id.* Second, the court must consider whether the well-pleaded factual allegations state a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the court can draw a reasonable inference

that the defendant is liable for the alleged misconduct. *Id.* at 678. When the allegations have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

### III. DISCUSSION

#### a. Schrader's Nevada RICO claims against all defendants

Pursuant to Nevada Revised Statutes ("NRS") §§ 207.470 and 207.400, a civil RICO cause of action rests upon sufficient allegations and proof that the defendants engaged in a "racketeering activity." "Racketeering activity" means engaging in at least two separate crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated. NRS § 207.390; *Hale v. Burkhardt*, 104 Nev. 632, 634 (1988). NRS § 207.360 defines 37 crimes which are "related to racketeering."

In her complaint, Schrader alleges that the defendants' racketeering activity includes "but is not limited to" violations of NRS §§ 201.300 (pandering and sex trafficking), 201.301 (facilitating sex trafficking), sexual assault, 201.320 (living from earnings of a prostitute), 200.463 and 200.464 (involuntary servitude), 200.467 and 200.468 (trafficking in persons for financial gain or illegal purposes). (ECF No. 90 ¶ 201).

For Nevada RICO actions, Nevada law requires a heightened pleading standard wherein the actions must "be pleaded with sufficient specificity because of the very serious consequences

James C. Mahan
U.S. District Judge

- 4 -

attached to the allegations of criminal conduct that are the essence of this kind of law suit [*sic*]." *Hale*, 104 Nev. at 637–38.  Schrader's assertion that she need only allege enough facts to meet the federal plausibility standard (ECF Nos. 123 at 3; 122 at 5) is mistaken[1] and not supported by Nevada law.[2]

### 1. Schrader does not plead the requisite transportation elements

The first issue is whether Schrader's trafficking allegations can properly be considered predicate acts for Nevada RICO purposes.  NRS §§ 200.467 and 200.468 both include the element of transporting or helping to transport an individual into Nevada who does not have the legal right to enter or remain in the United States.

In her complaint, Schrader does not allege the defendants transported or helped to transport her in or around the United States nor does she allege to have entered or remained in the country unlawfully. In her response, Schrader does not offer additional information to bolster her NRS §200.467 and 200.468 claims.

NRS § 201.301 similarly contains transportation and travel elements that Schrader fails to sufficiently plead.  Because Schrader has not made a plausible showing that the defendants

---

[1] Federal courts sitting in diversity apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities*, 518 U.S. 415, 427 (1996) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 (1938)).  While pleading standards are typically categorized as procedural law, the distinction can be nebulous, as here.  The Supreme Court has discouraged a "scientific" application of this legal terminology to resolve such discrepancies. *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945).  Instead, the Supreme Court has instructed lower courts to follow an outcome-determinative approach, such that a federal court should ensure that, under principles of consistency, *see* U.S. CONST. art. IV, § 1, the outcome of the litigation in the federal court—so far as legal rules determine the outcome of a litigation— *should be substantially the same as if tried in a State court*. *Id.* ("the intent of [*Erie*] was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.").  The court finds that the determination of which pleading standard to apply here is outcome-determinative, and thus the court follows Nevada state law.

[2] Schrader points to *Siragusa v. Brown*, 114 Nev. 1384 (1998) for state law support of her pleading sufficiency.  *Siragusa*, however, is inapposite.  There, the court relied on *Hale*, 104 Nev. at 636, 638 to hold that a Nevada RICO complaint was properly pled because it went *beyond* plausibility and set forth "numerous specific acts constituting the asserted crimes related to racketeering." *Siragusa*, 114 Nev. at 1396.

James C. Mahan
U.S. District Judge

- 5 -

violated each element of NRS §§ 200.467, 200.468, and 201.301, these crimes cannot be counted as predicate acts for Nevada RICO purposes.

### 2. Schrader's involuntary servitude allegations do not plausibly support her RICO claim

The next issue is whether Schrader's involuntary servitude allegations can properly be considered predicate acts for Nevada RICO purposes. NRS § 200.464 prohibits a person from knowingly recruiting, enticing, harboring, transporting, providing, or obtaining another person to be held in involuntary servitude or benefiting from another person being held in involuntary servitude. Aside from citing the statute in her operative complaint (ECF No. 90 ¶ 122), Schrader's complaint does not provide any facts to plausibly allege that defendants violated this statute.

Schrader provides slightly more detail when discussing NRS § 200.463. NRS § 200.463 provides that a person who knowingly subjects, or attempts to subject, another person to forced labor by causing or threatening to cause physical or financial harm or by abusing or threatening to abuse legal processes violates Nevada law. Here, Schrader's complaint alleges that defendants threatened to cause her physical harm or abuse the legal process. The complaint does not, however, allege any facts to support these conclusory allegations.[3]

As the court noted when dismissing the federal counterparts to these allegations, they are insufficient to plausibly support an intentional threat of serious harm that compelled Schrader and other female employees to stay with WLV and WRL when they otherwise would have left. (ECF No. 89 at 10). Therefore, Schrader's involuntary servitude claims are not properly pled as predicate acts for Nevada RICO purposes.

### 3. Other predicate acts raised by Schrader

Schrader also raises three other predicate acts—namely NRS §§ 201.300 (pandering and sex trafficking), 201.320 (living from earnings of a prostitute), and sexual assault. NRS §

---

[3] Schrader's response points to instances scattered throughout the complaint that detail times where she and other employees were allegedly told "not to complain or say no to" Mr. Wynn. However, these instances do not constitute threats of physical harm or abuse of legal processes.

James C. Mahan
U.S. District Judge

- 6 -

201.300 prohibits a person from inducing an adult to unlawfully engage in prostitution or to enter any place where prostitution is practiced. NRS § 201.295(5) defines prostitution as "engaging in sexual conduct with another person in return for a fee, monetary consideration, or other thing of value."

Defendant Wynn points out that the court found Schrader's similar federal RICO allegations of sex trafficking failed because "nothing of value" was exchanged when she was allegedly compelled to engage in sex acts with Wynn and a VIP guest. (ECF Nos. 134 at 5; 89 at 12–13). In her first amended complaint, Schrader alleges that she was forced to perform sexual services off the clock, which led to not receiving credit for time worked and consequently a loss of accrued vacation time. (*See* ECF No. 90 ¶¶ 107, 108, 172, 228).

The court finds that, even accepting Schrader's allegations as true, she does not plausibly allege any actual exchange of value for engaging in the alleged sex acts. Denial of compensation for alleged sex acts is not equivalent to a "fee, monetary consideration, or other thing of value" as required by the statute.

Schrader's claims under NRS § 201.320—that is, living from earnings of a prostitute— are similarly deficient and conclusory. This leaves only one pleaded predicate act—sexual assault—but this lone, remaining act falls short of Nevada RICO's two predicate act requirement.

Therefore, because Schrader does not properly or sufficiently plead her Nevada RICO claim, defendants' motions to dismiss are GRANTED as to the Nevada RICO claims against them.

### b. Schrader's IIED claim against Wynn

The next issue concerns Schrader's IIED claims against Wynn, which Wynn argues are either time-barred or insufficiently pled. (ECF No. 99 at 12, 18).

"To state a claim for intentional infliction of emotional distress [under Nevada law], a plaintiff must allege (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the defendant's

James C. Mahan
U.S. District Judge

- 7 -

conduct actually or proximately caused the distress. [E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Friedman v. United States*, No. 2:18-cv-857-JCM-VCF, 2019 WL 121965, at *5 (D. Nev. Jan 7, 2019) (internal citations and quotation marks omitted) (citing *Oliverio v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000)).

"[U]nwelcome sexual advances, sexual remarks, crude innuendos, inappropriate physical touching, and retaliation may reasonably be regarded as extreme and outrageous conduct." *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1268 (D. Nev. 2001) (internal quotation marks and citations omitted).

First, Schrader avers that Wynn recommended her "massage" services to a VIP guest, who in turn sexually assaulted her. (ECF No. 122 at 16). Wynn correctly argues that the wrongful actions of an unnamed VIP guest is not enough to infer that Wynn himself engaged in extreme and outrageous conduct. (ECF No. 134 at 11). Therefore, Schrader's IIED claim against Wynn, by way of a third party, fails.

Second, it is generally agreed that statutes of limitations protect evidence reliability, prevent indefinite liability for potential defendants, and discourage prospective claimants from "sleeping on their rights." *State Indus. Ins. Sys. v. Jesch*, 101 Nev. 690, 694 (1985). "In determining whether a statute of limitations has run against an action, the time must be computed from the day the cause of action accrued. A cause of action accrues when a suit may be maintained thereon." *Clark v. Robinson*, 113 Nev. 949, 951 (1997) (internal citation omitted).

Schrader's complaint generally asserts that Wynn sexually abused her and other unnamed female employees from 2000 to 2018. (ECF No. 90 ¶¶ 17, 211). The complaint mentions only two specific inappropriate interactions directly between Wynn and Schrader, one in 2012 and the other in 2015. (*Id.* ¶¶ 47–48). Wynn argues the 2012 and 2015 claims are time-barred because the statute of limitations for IIED is two years; the doctrine of continuing violations does not apply; equitable estoppel does not apply; and that equitable tolling does not resuscitate Schrader's expired claims. (ECF No. 99 at 12–18). The court agrees and finds Schrader had the

James C. Mahan
U.S. District Judge

- 8 -

necessary information to bring a claim as to those actions within the required timeframe but failed to do so.[4]

Schrader's sexual abuse allegations from 2017 to 2018, however, do come within the IIED statute of limitations. (ECF No. 122 at 17). Wynn counters that this claim was insufficiently pled because Schrader has not properly alleged that she experienced any extreme or severe emotional distress. (ECF No. 99 at 18). The court disagrees.

Schrader claims that she has been "traumatized" by Wynn's sexual misconduct, which has impaired her ability to perform daily functions without Wynn's "permission," and required her to hire a therapist to address her newly developed fear and distrust toward all men, amongst other issues. (ECF No. 90 ¶ 67). The court finds that these allegations plausibly allege extreme or severe emotional distress proximately caused by Wynn.

Accordingly, Wynn's motion to dismiss is GRANTED in part, and DENIED in part as to Schrader's IIED claim. Specifically, Schrader's time-barred allegations based on conduct from 2012 and 2015, and her allegations against Wynn through a third-party VIP guest are dismissed with prejudice. Schrader's IIED claim against Wynn based on her allegations of conduct that occurred between 2017 and 2018 remains.

c. **Schrader's civil conspiracy claim against defendant Wynn**

Wynn next argues Schrader's civil conspiracy claim should be dismissed for failing to sufficiently allege an agreement or concerted action to commit an underlying tort. A civil conspiracy is defined as "a combination of two or more persons, who by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. Union Fed. Sav. & Loan Ass'n,* 99 Nev. 284, 662 P.2d 610, 622 (1983).

Wynn contends that the only factual allegation to support Schrader's civil conspiracy claim is that "Wynn conspired with VIP clients" to "recommend" Schrader as a massage therapist, leading to sexual assault by these VIP clients until early 2018. (ECF No. 90 ¶¶ 49, 222). The court disagrees. Schrader's well-pleaded allegations that Wynn regularly

---

[4] Schrader filed her complaint in Nevada state court on September 29, 2019. (ECF No. 1-1). The case was subsequently removed to this court on December 16, 2019. (ECF No. 1).

"recommended" her as a "massage therapist" as pretext for sexual acts is not so vague as to be dismissed outright as this stage of litigation.

Accordingly, defendant Wynn's motion to dismiss (ECF No. 99) is DENIED as to Schrader's civil conspiracy claim.

## IV. CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant Wooden's motion to dismiss (ECF No. 98) be, and the same hereby is, GRANTED. Schrader's claims against Wooden are DISMISSED, without prejudice.

IT IS FURTHER ORDERED that WLV and WRL's motion to dismiss the Nevada RICO claim against them (ECF No. 103) be, and the same hereby is, GRANTED. Schrader's Nevada RICO claims are DISMISSED against WLV and WRL, without prejudice. The Title VII and IIED claims against them remain.

IT IS FURTHER ORDERED that defendant Wynn's motion to dismiss (ECF No. 99) be, and the same hereby is, DENIED in part, and GRANTED in part consistent with the foregoing. For clarity, Schrader's allegations regarding IIED conduct in and after 2017, as well as her civil conspiracy claim, remain.

The clerk is instructed to dismiss defendant Wooden from the case.

DATED March 31, 2022.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**